**In re Edmund F. DINSMORE, Jr., Debtor.**

**Bankruptcy No. HK 90–85251.**

United States Bankruptcy Court, W.D. Michigan.

June 26, 1992.

Thomas G. King, Kreis, Enderle, Callander & Hudgins, P.C., for debtor.

David A. Malson, Jr., Judy L. Walton, Tolley, Fisher & Verwys, P.C., for Ameritrust Nat. Bank.

## OPINION ON CONFIRMATION OF DEBTOR'S PROPOSED SECOND AMENDED PLAN OF REORGANIZATION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the Court on the Debtor's Motion for Confirmation of his Chapter 13 plan of reorganization and on objections raised by Ameritrust National Bank, Michiana ("Ameritrust") regarding the treatment of its claim in the Debtor's Second Amended Plan of Reorganization and Offer of Adequate Protection.

A hearing was held on April 20, 1992, in Kalamazoo, Michigan at which time testimony was taken and oral arguments were presented. At the hearing, the parties were asked to submit a written stipulation of facts concerning, among other matters, the amount the Debtor owes on his debt to Ameritrust. The parties, apparently, have been unable to reach agreement on this issue (*See* Letter from Debtor's Counsel dated 5/12/92), and a factual hearing will be scheduled. This proceeding was then taken under advisement and the parties were given time to submit additional written briefs in support of their positions. Having considered the arguments presented, I am now prepared to rule on the confirmation of the Debtor's Chapter 13 plan of reorganization and on the objections raised by Ameritrust.

I have jurisdiction to decide the issues raised pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(L).

## FACTUAL AND PROCEDURAL HISTORY

The following facts appear undisputed after reviewing the record of this case, and the parties' briefs, exhibits and testimony.

The Debtor, Edmund F. Dinsmore, Jr., filed for relief under Chapter 13 of the Bankruptcy Code[1] on November 23, 1990. Ameritrust filed a proof of claim in the principal amount of $127,852.75. Ameritrust loaned working capital to the Debtor's former business, Magnum Motor Coach, Ltd. (hereinafter "Magnum"). The Debtor personally guaranteed the corporate debt and as additional security granted Ameritrust a second mortgage on his residence and on commercial rental property located on U.S. Route 12.[2] Ameritrust is also the first mortgagee on the Debtor's residence. The treatment of Ameritrust's claim as first mortgagee is not disputed.

At a hearing on September 23, 1991, I signed an order confirming the Debtor's Chapter 13 plan of reorganization. Since Ameritrust failed to receive proper notice of this hearing, I granted relief from the order and an opportunity to object to the Debtor's confirmation. Ameritrust has since filed several objections which are the subject of this opinion.

On December 19, 1991, Ameritrust filed a motion for relief from stay pertaining to the commercial property on U.S. Route 12 and the Debtor's residence. Pursuant to Fed.R.Bankr.P. 4001(d)(1), Ameritrust and the Debtor submitted a stipulation to the Court granting relief from stay on the commercial property. An order was signed approving the stipulation on February 24, 1992. The commercial property has since

been foreclosed upon by Century Bank, the first mortgagee, and sold. The foreclosure and sale occurred during the Debtor's Chapter 13 reorganization prior to the hearing on Ameritrust's objection to the Debtor's confirmation. Ameritrust did not enter a bid at the foreclosure sale. Tr. 4/20/92 at 20.

A hearing on the remaining portion of Ameritrust's motion for relief from stay concerning the residential real property was held on March 23, 1992. An order was entered on March 31, 1992 denying Ameritrust's motion, but adjourning the hearing in case the Debtor could not propose a confirmable plan of reorganization. In the same order, I found the property value of the Debtor's home to be $76,000.00. The parties are in apparent agreement that my determination of the value of the property applies for the purpose of confirmation as well.[3]

After the hearing on relief from stay, the Debtor submitted an amendment to his second amended plan of reorganization specifically dealing with the treatment of Ameritrust. Essentially, the Debtor's plan proposes a cramdown[4] of Ameritrust's claim. Pursuant to § 506(a), the Debtor calculates the value of Ameritrust's secured claim to be $48,604.71. The Debtor arrives at this figure by deducting potential closing costs and commissions, real estate taxes and the first mortgage pay-off from the $76,000.00 value of the residential property deter-

---

1. The term Bankruptcy Code refers to the provisions of 11 U.S.C. §§ 101–1330. Unless otherwise designated the sections cited in this opinion appear in the Bankruptcy Code.

2. This real estate will be referred to as "the commercial property" or "the commercial property on U.S. Route 12."

3. In the Amendment to Debtor's Second Amended Plan of Reorganization, the Debtor calculates the payoff due Ameritrust on its secured claim using $76,000.00 as the value of his residence. Similarly, Ameritrust, in its final objection to the Debtor's plan, remarks in the statement of facts and does not dispute that my determination of the home's value on March 23, 1992 applies to this matter as well. Ameritrust's Final Mem.Supp.Obj. filed 5/4/92 at 2.

4. The term "cramdown" as it is used in this opinion and as will be discussed later refers to the treatment afforded a secured creditor under 11 U.S.C. § 1325(a)(5)(B). Under § 506(a) the amount owed to a creditor is split into secured and unsecured claims based on the value of the collateral. Only the allowed secured claim, determined by reference to § 506(a), is paid over time with interest. The remaining portion is treated as an unsecured claim. As to the meaning of the term, the Sixth Circuit has stated:
   Section 1325(a)(5)(B) ... is sometimes referred to as a "cramdown" provision because a secured creditor is forced to accept secured status ... only to the extent of the value of the collateral at the time.
   *U.S. v. Arnold,* 878 F.2d 925, 928 (6th Cir.1989). A central issue in this proceeding is whether the Debtor can accomplish a cramdown of Ameritrust's claim.

mined by the Court.[5] On the value of the secured claim, the plan proposes to pay Ameritrust a floating rate of interest equal to the bank's internal prime rate plus 2% with a fifteen year amortization and a balloon payment in ten years. Although providing a variable rate of interest, the Debtor's plan caps the amount which the interest rate can rise at 2% in any one year and 6% over the life of the plan. The balance of Ameritrust's claim will be paid as a general unsecured claim.

Ameritrust responded with several objections to the Debtor's plan. First, Ameritrust argued that the Debtor did not make payments under the proposed plan. The amendment filed to the Debtor's second amended plan stated that monthly payments of $478.63 would commence on February 1, 1992. Next, Ameritrust contended that the Debtor failed to provide specifically for the retention of its lien as required by § 1325(a)(5)(B)(i).[6]

Both of these objections have been resolved. At the hearing on confirmation, the Debtor testified that all delinquent payments were in the process of being made current. Tr. 4/20/92 at 10.[7] Further, counsel for the Debtor indicated that the language of the plan would be changed to provide specifically for the retention of Ameritrust's mortgage interest in the home. Tr. 4/20/91 at 35. The Debtor's plan therefore complies with the confirmation standards of § 1325(a)(5)(B)(i) and § 1325(a)(6).

Ameritrust's remaining objections are the subject of this opinion. To begin with, Ameritrust argues that the plan provides for payment on its secured claim extending beyond the life of the plan in violation of § 1322(c). At issue is whether § 1322(b)(5) permits the Debtor to pay Ameritrust's claim over a period greater than the five years allowed for cause upon court approval.

Ameritrust also questions whether and to what extent the Debtor may modify the treatment its claim in the plan of reorganization. Several issues emerge from this objection, as follows:

1. Does the Debtor propose an impermissible modification in violation of § 1322(b)(2)?

2. Is the Debtor permitted, in light of the Supreme Court's recent decision in *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773 [116 L.Ed.2d 903] (1992), to bifurcate Ameritrust's claim into secured and unsecured portions under § 506(a) and provide for disparate treatment under the plan?

3. If bifurcation of Ameritrust's claim is permissible, should the Debtor be allowed to deduct potential closing costs and real property taxes from the value of the residence?

Finally, Ameritrust objects to the rate of interest provided by the Debtor. Ameri-

5. In his Offer of Adequate Protection, the Debtor determines the value of Ameritrust's allowed secured claim under § 506(a) as follows:

| | |
|---|---|
| Fair Market Value (determined as of 3/23/92) | $76,000.00 |
| Potential Costs of Sale (10% of fair market value) | ($7600.00) |
| Real Estate Taxes | ($8918.80) |
| First Mortgage | ($10,876.49) |
| Ameritrust's Allowed Secured Claim | $48,604.71 |

6. Section 1325(a)(5) states:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

7. The Debtor stated that on the morning of the confirmation hearing he gave his attorney three money orders covering the February, March and April plan payments. Tr. 4/20/92 at 10. Apparently, this testimony resolved the issue. Counsel for Ameritrust did not raise the lack of payment as a contention in his closing argument or in the final brief submitted. *See*, Tr. 4/20/92 at 34–41; Ameritrust's Final Mem. Supp.Obj. filed 5/4/92.

trust argues that an interest rate of prime plus 2% does not provide for payment of the present value of its claim. Ameritrust also objects to the ceiling placed on the amount which the rate can rise.

DISCUSSION AND CONCLUSIONS

### A. IS THE DEBTOR PERMITTED TO EXTEND PAYMENT OF AMERITRUST'S CLAIM BEYOND FIVE YEARS?

In the amendment submitted to his second amended plan of reorganization, the Debtor proposes to repay Ameritrust's allowed secured claim at an interest rate of prime plus 2% amortized over fifteen years with a balloon payment after ten years. Ameritrust objects to this treatment arguing that it violates the time frame for payment established under § 1322(c) for Chapter 13 plans of reorganization. This section provides:

> The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Section 1322 of the Code sets forth what is required and what is permissible in a confirmable plan of reorganization. Under the specific terms of § 1322(c), a Chapter 13 debtor must propose a plan providing for the repayment of creditors within three years of the confirmation date. For cause shown, the court may extend payment for an additional period, up to, but no longer than five years. *Citizens Trust & Savings Bank v. Schafer (In re Schafer)*, 99 B.R. 352, 354 (W.D.Mich.1989). A debtor's plan of reorganization cannot be confirmed if it violates this provision. *See* § 1325(a)(1).

Under certain circumstances, a debtor is permitted to continue making payments on a claim beyond the period allowed under § 1322(c). Section 1322(b)(5) allows a plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." When the debtor is liable and in arrears on a pre-petition obligation which by its own terms extends beyond the life of the plan of reorganization, the debtor is allowed to cure any default and continue making regular payments. *Id.* at 354. The underlying debt is excepted from discharge under § 1328(a)(1) or § 1328(c)(1).

In *Schafer*, the debtor submitted a plan of reorganization calling for repayment to a mortgagee over twenty years at 10.25% interest. By its original terms, the mortgage contained a balloon payment after five years which had become due during the debtor's Chapter 13, prior to confirmation of a plan. Writing for the District Court, Judge Enslen found that the Bankruptcy Court erred in confirming the debtor's plan. *Id.* at 355. Judge Enslen explained that cure and maintenance under § 1325(b)(5) is permitted only on debts which by their own terms extend beyond the life of the plan.

On March 13, 1985, the Debtor signed a guaranty in which he personally guaranteed "the full payment at maturity of all indebtedness of every kind" owed by Magnum. The guaranty was secured by a second mortgage, recorded on May 31, 1985, on the Debtor's commercial property. The guaranty was also secured by a second mortgage on the Debtor's residential real property recorded on April 16, 1987. Subsequently, Magnum established a $30,000 credit line. Magnum also entered into two short term notes.

The Debtor has tried to distinguish the facts of this case from *Schafer* pointing out that Ameritrust's secured claim emanates from the guaranty signed by the Debtor. Now, I realize the guaranty signed by the Debtor was for an indefinite time period. Under it, the Debtor agreed to guarantee the future indebtedness of Magnum without a fixed date of termination. But, the advances made to Magnum, which form the basis of Ameritrust's claim on the guaranty, were short term in nature. The Debtor's obligations to Ameritrust all became due or will be due prior to

the date of final payment under the Debtor's plan of reorganization.

■ Reviewing the obligations underlying Ameritrust's secured claim, I find that the Debtor may not extend repayment beyond the period allowed under § 1322(c). Although the obligations are distinct from what was before the District Court in *Schafer*, they are still short term in nature and outside the scope of § 1322(b)(5). Following the reasoning and holding of *Schafer*, the Debtor cannot stretch out repayment on Ameritrust's claim beyond the period allowed under § 1322(c).

Without the ability to extend payment to Ameritrust under § 1322(b)(5), the Debtor's plan is in violation of § 1322(c) and confirmation is denied. The Debtor will be given an opportunity, however, to amend the plan to provide for repayment within the period allowed.

### B. DOES THE PLAN PROPOSE AN IMPERMISSIBLE MODIFICATION UNDER § 1322(b)(2)?

■ Section 1322(b)(2) provides that a debtor's plan of reorganization may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." The prohibition contained in § 1322(b)(2) is limited to a specific factual situation. When the overall use of the property securing the creditor's claim goes beyond the protection of § 1322(b)(2), modification is permitted. *Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1441 (6th Cir.1985), *cert. den. Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

At the time of filing, Ameritrust was secured by a first and second mortgage on the Debtor's residence and by a second mortgage on commercial real estate. It is the second mortgage on the residence that

the Debtor seeks to bifurcate and cram down. The commercial property was sold post-petition during the pendency of the Chapter 13.

Ameritrust argues that since the commercial property was sold prior to confirmation it is now a creditor secured only by the Debtor's principal residence for the purpose of § 1322(b)(2). In support of this contention, Ameritrust has cited several cases.[8] These cases hold that for the purpose of § 1322(b)(2), a security interest in property other than the principal residence must have independent value in order for modification to be permissible. If the value of the additional interest is illusory, modification is not permitted. *In re Hart*, 923 F.2d 1410, 1416–17 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 129 (3rd Cir.1990); *In re Foster*, 61 B.R. 492, 495 (N.D.Ind.1986).

The conclusions of the cases cited by Ameritrust are instructive but not determinative. The cases relied on by Ameritrust do not reach the question of what happens when the additional collateral is disposed of post-petition. In this matter, I am not dealing with collateral that due to its lack of inherent value fails to constitute security in addition to the Debtor's principal residence. Ameritrust was secured on the date of filing and up to the foreclosure sale by additional collateral possessing independent value. Its interest in the commercial property was never illusory. At issue is whether the foreclosure sale, conducted post-petition, leaves Ameritrust secured only by the Debtor's residence for the purpose of § 1322(b)(2).

■ In resolving this issue, I find that "[t]he crucial date for determining the extent of a lender's collateral is when the chapter 13 petition is filed." *In re Groff*, 131 B.R. 703, 706 (Bankr.E.D.Wis.1991); *In re Green*, 7 B.R. 8, 9 (Bankr.S.D.Ohio 1980).[9] Looking to the date of filing is

---

8. *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990); *In re Foster*, 61 B.R. 492 (Bankr. N.D.Ind.1986).

9. I realize the value of a creditor's secured claim under § 506(a) is determined in light of the proposed disposition of the property and in conjunction with any hearing on such disposition. For the purpose of this dispute, the collateral is valued as of the time of confirmation. But the

proper to discourage creditors from disclaiming security interests post-petition or attempting other tactics to defeat the debtor's ability to modify the treatment of claims. Evaluating the character of a creditor's security as of the date of filing also accords with the specific statutory purpose of § 1322(b)(2). The limitation placed on modification in § 1322(b)(2) was drafted to protect the traditional home mortgage lender. *See, e.g., In re Foster,* 61 B.R. at 495; *In re Allen,* 75 B.R. 344, 345 (Bankr. S.D.Ohio 1987). It is a narrow exception to the general grant of power to a Chapter 13 debtor to restructure his debts. *In re Foster,* 61 B.R. at 495. A creditor should not be allowed to attain this status by virtue of its post-petition actions and its residual security.

■ There is no dispute that on the date of filing Ameritrust possessed a valid security interest in property other than the Debtor's principal residence. On this date Ameritrust was secured by commercial and residential real estate.

Furthermore, Ameritrust's position is not that of a traditional home mortgage lender. The Debtor became liable to Ameritrust pursuant to the guaranty of a business loan. Ameritrust obtained a security interest in commercial real estate and the rents and profits therefrom to secure its claim. According to the facts of this case, Ameritrust is a commercial lender who by virtue of post-petition events is now secured only by the Debtor's residence. The foreclosure sale of the property on U.S. Route 12 does not allow Ameritrust to claim the protection reserved to only a narrow class of creditors.

The treatment afforded Ameritrust's claim is not prohibited under § 1322(b)(2). The Debtor may modify Ameritrust's claim. Ameritrust is not allowed to claim an additional benefit of its relief from stay

action and boot strap into the narrow protection afforded under § 1322(b)(2).

## C. DOES THE RECENT DECISION OF *DEWSNUP V. TIMM* PRECLUDE THE BIFURCATION OF AMERITRUST'S CLAIM?

Even with the conclusion that modification is permitted under § 1322(b)(2), Ameritrust argues that the Debtor is prevented by the recent Supreme Court case of *Dewsnup v. Timm* from splitting its claim into secured and unsecured portions under § 506(a) and providing dissimilar payment terms for each class.

■ Under § 506(a), a creditor possesses an allowed secured claim only up to the value of the collateral. *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). The remaining portion of the creditor's claim is unsecured.

■ Section 1325(a)(5) sets forth the treatment necessary for allowed secured claims in a Chapter 13 plan of reorganization. A plan is confirmable if one of the following applies: first, the holder of such claim accepts the plan; second, the secured claim is paid according to the provisions of § 1325(a)(5)(B); or third, the debtor surrenders such property securing the claim. It is the second option that is before me in this case.

■ To comply with § 1325(a)(5)(B) the plan must provide that the creditor retain its lien and receive the present value of its allowed secured claim. *In re Kain,* 86 B.R. 506, 516 (Bankr.W.D.Mich.1988). The creditor is paid the value of its allowed secured claim plus interest so that the value of its claim does not diminish during the pendency of the reorganization.

■ In *Dewsnup,* the Supreme Court confronted the interplay between § 506(a)

issue here is different than the question of valuation. Whether a creditor warrants § 1322(b)(2)'s protection against modification should be determined as of the time of filing.

Further, although it has not been raised, I find my decision is not affected by the Sixth Circuit's decision in *In re Glenn* which concerned the cutoff date of a debtor's statutory right of redemption in bankruptcy. *Glenn* did

and § 506(d).[10] At issue was whether a Chapter 7 debtor could "strip down" a creditor's lien on real property to the value of the collateral. *Dewsnup*, 112 S.Ct. at 775. The process of stripping down a lien involves the use § 506(a) to divide a creditor's claim into secured and unsecured portions. Section 506(d) is then relied on to void the creditor's lien to the extent the claim is undersecured. Relying on the history of bankruptcy practice and the treatment of liens, the Court determined that a Chapter 7 debtor cannot utilize § 506(d) to strip down a creditor's lien. The Court adopted the following reasoning:

> the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured. Because there is no question that the claim at issue here has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d).

*Dewsnup*, 112 S.Ct. at 777.

In support of its conclusion, the Court pointed out that the practical effect of its decision would be to allow any increase in the value of the collateral during the pendency of the bankruptcy to benefit the creditor. *Dewsnup* at 778.

Ameritrust argues that the Supreme Court's interpretation of "allowed secured claim" under § 506(d) should be applied to § 1325(a)(5)(B) to prevent a debtor from cramming down a secured claim. Based on *Dewsnup*, Ameritrust contends that in § 1325(a)(5)(B) the term "allowed secured claim" means the total amount owed by the Debtor. According to Ameritrust, *Dewsnup* mandates that the amount paid under § 1325(a)(5)(B) be the full amount of its claim rather than the bifurcated amount

under § 506(a). Ameritrust's argument fails for several reasons.

First, the Supreme Court specifically focused on the facts before it and limited its decision to the context of a Chapter 7 debtor seeking to void a lien under § 506(d). The Court stated that "[a]ccordingly, we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Dewsnup*, at 778 n. 3. With this express disclaimer, the Court's conclusion is not binding on the Debtor's Chapter 13 reorganization. The discussion which follows illustrates why even analogy is inappropriate.

In the matter before me, modification of the creditor's claim is expressly permitted under § 1322(b)(2). The Bankruptcy Code envisions a Chapter 13 debtor modifying the treatment of its secured creditors under the plan of reorganization.

Ameritrust has cited many cases to support its contention that the Debtor may not utilize § 506(a). Ameritrust's Final Mem. Supp.Obj. filed 5/4/92 at 7–8. Several of the cases relied on were decided after *Dewsnup*. *In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla.1992); *In re Strober*, 136 B.R. 614 (Bankr.E.D.N.Y.1992); *In re Davidoff*, 136 B.R. 567 (Bankr.M.D.Fla.1992); *Harris v. Barclay's American Mortgage Corp.* (*In re Harris*), No. 91–1068S, 1992 WL 33843 (Bankr.E.D.Pa. February 12, 1992). The cases cited by Ameritrust concern a different issue, however, than the one before me. All the cited cases deal with a creditor secured only by the debtor's principal residence.

For instance, the bankruptcy court in *In re Ireland* held that § 1322(b)(2) prevents a debtor from using § 506(a) to alter and modify the treatment of a creditor secured only by the debtor's principal residence. *In re Ireland*, 137 B.R. at 70. The bankruptcy court in *In re Strober* reached the same result, again premised on modification being barred under § 1322(b)(2). *In re Strober*, 136 B.R. at 626. *In re Davidoff*

---

not deal with the status of a secured creditor's claim under § 1322(b)(2).

**10.** Section 506(d) provides "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

reasoned that the issue of permissible cramdown arises in a Chapter 13 only when the creditor is secured solely by the debtor's residence. Otherwise, the court stated that "[p]ragmatically, not a day goes by that this Court is not requested to value a secured creditor's interest in a Chapter 13 debtor's property." *In re Davidoff,* 136 B.R. at 567–68 n. 2.

Admittedly, the issue of whether a debtor can cram down a lender secured only by the debtor's residence is hotly contested, even after *Dewsnup. See Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176 (2nd Cir.1992). But it is distinct from what is before me and it is a dispute that I need not consider. At best, the cases cited by Ameritrust are irrelevant to the question before me. In the *Davidoff* case, the court's reasoning actually supports the Debtor's position.

Since the earliest case law considering § 1325(a)(5), a debtor has been allowed to bifurcate and cram down a claim not secured solely by the debtor's principal residence. The words, "allowed secured claim", have been consistently interpreted to mean the value of the creditor's claim determined by reference to the collateral under § 506(a). Summarizing the treatment under § 1325(a)(5)(B), the Sixth Circuit stated that "[i]n effect the law requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan." *Memphis Bank & Trust v. Whitman,* 692 F.2d 427, 429 (6th Cir.1982). "Any indebtedness due the creditor in excess of the value of the collateral is included with other allowed unsecured claims." *U.S. v. Arnold,* 878 F.2d 925, 928 (6th Cir.1989) (interpreting § 1325(a)(5)(B) in the context of a Chapter 12 reorganization).

*Dewsnup* does not change the result of these Sixth Circuit cases nor does it limit permissive modification under § 1322(b)(2). The conclusions reached by the Sixth Circuit in *Memphis Bank* apply with full force to confirmation of the Debtor's plan. When, as in this case, the creditor is secured by collateral other than the debtor's principal residence, § 1322(b)(2) and § 1325(a)(5)(B) expressly permit the bifurcation and modification of the creditor's claim in a plan of reorganization. Ameritrust possesses an allowed secured claim only up to the value of its interest in the collateral as set forth in § 506(a).

Accordingly, the Debtor is permitted to bifurcate and engage in a cramdown of Ameritrust's claim. To this extent, Ameritrust's objections are denied.

### D. DEDUCTION OF TAX LIENS AND FORECLOSURE COSTS

The next question before me is whether the value of real estate tax liens and potential costs of sale should be deducted from the fair market value of the Debtor's residence for the purpose of computing Ameritrust's allowed secured claim. The Debtor argues that the amount of the first mortgage, the value of outstanding real estate taxes and potential costs of sale should be deducted from the fair market value of the residential real estate.

Ameritrust objects to this valuation on two grounds. First, Ameritrust argues that outstanding real estate taxes will be paid under the plan and therefore will not diminish the value of its interest in the collateral. Next, Ameritrust contends that since the Debtor will remain in possession of the property during reorganization, potential costs of sale should not be deducted. Apparently, Ameritrust does not object to deducting $10,876.49 for the value of the first mortgage. In any event, for the reasons that follow it is clear that Ameritrust's allowed secured claim should be reduced by the value of the first mortgage.

The starting point for resolving these valuation questions is § 506(a), which states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunc-

tion with any hearing on such disposition or use on a plan affecting such creditor's interest.

"Bankruptcy courts confronted with how to interpret 'valuation' in § 506(a) when a debtor proposes to keep the secured collateral have reached conflicting results." *Brown & Company Securities Corp. v. Balbus (In re Balbus )*, 933 F.2d 246, 248 (4th Cir.1991) (citations omitted). The conflict stems from the ambiguous language of § 506(a). *Id.* at 248.

The first sentence in § 506(a) instructs the court to value the creditor's secured claim in light of that creditor's interest in the collateral. Focusing on this portion of the statute, many courts conclude that a creditor's interest is limited to what could be obtained upon the liquidation of the property. *Overholt v. Farm Credit Services (In re Overholt )*, 125 B.R. 202 (S.D.Ohio 1990); *In re Hill*, 96 B.R. 809 (Bankr.S.D.Ohio 1989); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989), *aff'd* 123 B.R. 254 (S.D.Ohio 1990); *In re Claeys*, 81 B.R. 985 (Bankr.D.N.D.1987). For instance, in this case, if the Debtor's residence was foreclosed upon and sold, Ameritrust would only receive the sale price of the property less the value of the first mortgage, the taxes owing and the costs of sale. Under this reasoning, the Debtor's retention of the property has no affect on the amount of the creditor's claim under § 506(a). Valuation concentrates on the creditor's interest and the most a creditor could obtain would be the amount if its interest were liquidated.

Disagreeing with this interpretation, a number of courts, equally strong in their reasoning, conclude that when the debtor proposes to retain the property in a plan of reorganization, foreclosure costs should not be deducted. *In re Balbus*, 933 F.2d at 252; *Beacon Hill Apartments, Ltd. v. Columbia Sav. & Loan Ass'n (In re Beacon Hill Apartments, Ltd.)*, 118 B.R. 148 (N.D.Ga.1990); *Wolk v. Goldome Realty Credit Corp. (In re 222 Liberty Assoc.)*, 105 B.R. 798 (Bankr.E.D.Pa.1989); *In re Courtright*, 57 B.R. 495 (Bankr.D.Or.1986). In arriving at their interpretation, these courts note the direction given in the concluding sentence of § 506(a) which explains that any valuation must be made in light of the proposed disposition or use of the property. In a Chapter 13 proceeding, the debtor generally proposes to retain and use the secured property. Liquidation or foreclosure is not contemplated. With this in mind, considering costs of sale is out of line with the reason for valuation and the disposition of the property under the plan of reorganization. As one court has stated, if the first sentence of § 506(a) "were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute ... would be surplusage." *In re Courtright*, 57 B.R. at 497.

There appears to be no one correct interpretation from the express language of the statute. The issue was aptly stated as follows:

> Whether a valuation is made without regard for potential costs of liquidation depends, it seems, upon the emphasis given to the first and second sentences of section 506(a). The first sentence, providing that the claim is secured to the extent of the value of the creditor's interest in the property, suggests that since it is the creditor's interest that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property. Yet, the language of the second sentence suggests that the proposed disposition or use of the collateral itself must be considered when determining that value.

*In re Claeys*, 81 B.R. 985, 990 (Bankr. D.N.D.1987).

After reviewing cases on either side of this issue, I am persuaded by the decisions which give full meaning to the second sentence of § 506(a). Section 506(a) concerns the determination of a creditor's allowed secured and unsecured claims. The first sentence instructs the court to focus on the creditor's interest in the estate's interest in the collateral. The second sentence explains that the creditor's interest depends on the circumstances of the case. This leads to two conclusions.

First, a previous determination of value is not binding later on in the case. "To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of a plan." S.Rep. No. 989, 95th Cong., 2d Sess., 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854. Second, and more importantly in this case, the value of the creditor's interest is determined in light of facts of the case and the purpose of the proceeding. In an attempt at reconciliation, it can be said that the first sentence focuses the court's attention on the creditor's interest, the second sentence explains that valuing this interest is fact intensive.

In this case, the specific purpose of valuation is to determine under § 506(a) Ameritrust's allowed secured claim. It arises in the context of confirmation of the Debtor's plan which contemplates retention of the residential property. The estate's interest, upon which Ameritrust's claim is valued, is in keeping the property. Ameritrust's claim would be improperly reduced if it were forced to bear hypothetical costs of sale which the Debtor's reorganization does not envision incurring.

As the legislative history states, valuing Ameritrust's allowed secured claim does not necessarily contemplate a forced sale of the property. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, p. 6312. When as in the case before me, the debtor chooses to retain and use the property, the creditor should not have its claim reduced to liquidation value. Costs of sale are a hypothetical computation that should be considered only when disposition of the property is contemplated. When the debtor proposes to retain and use the property, closing costs should not be considered.

Ameritrust's claim should be valued based on residential property occupied and used by the Debtor. The $7600.00 in hypothetical closing costs should not be deducted from the fair market value of the property in computing Ameritrust's allowed secured claim for payment under § 1325(a)(5).

There is a difference, however, in considering real estate taxes and the first mortgage. Both are actual encumbrances upon the residential property and upon the estate's interest therein. Unlike costs of sale which arise only conditionally upon the disposition of the property, the first mortgage and real estate tax liens are existing. Even though the property is retained by the Debtor, the taxes and the first mortgage impair the estate's interest, and likewise Ameritrust's interest, in the property. Both should be deducted from the fair market value in computing the allowed secured claim. The fact that the Debtor is paying the taxes and the first mortgage as part of his plan has no effect. Ameritrust is not permitted to increase the value of its claim as other creditors are paid off during reorganization.

## E. COMMERCIALLY REASONABLE INTEREST RATE

The final issue to be determined is the proper interest rate applied to the payment of Ameritrust's allowed secured claim. "Section 1325(a)(5)(B) seems to require the Bankruptcy Court to assess interest on the secured claim for the present value of the collateral ... in order not to dilute the value of that claim through delay in payment." *Memphis Bank & Trust v. Whitman*, 692 F.2d at 429.

At issue is what interest rate accomplishes this task. In *Memphis Bank*, the Sixth Circuit stated that "in the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region." *Id.* at 431.

The Debtor proposes to pay Ameritrust a floating rate of interest of prime plus 2% with a cap on the amount the interest can rise in any one year and over the life of the plan. This rate is based, however, on a fifteen year amortization and a ten year balloon payment. Since I have already decided that Ameritrust must be paid under the time frame established in § 1322(c), the Debtor will be given an opportunity to per-

haps work out an agreement on the interest rate to be paid under the new terms. Otherwise, I will make a decision on the rate of interest at the time set for determining the amount owed to Ameritrust under the second mortgage.

## CONCLUSION

For the reasons stated, the Debtor's Motion for Confirmation is denied. The Debtor is given thirty days, however, to submit an amended plan complying with this decision. A hearing will be scheduled to determine the amount owed to Ameritrust under the second mortgage and, if necessary, the proper interest rate. Further, the following determinations are also made:

1. The Debtor must propose to pay off Ameritrust's second mortgage claim in compliance with the time frame of § 1322(c);

2. The Debtor's plan does not propose an impermissible modification of Ameritrust's claim and to this extent, Ameritrust's objection is denied;

3. The recent Supreme Court decision in *Dewsnup* does not preclude bifurcation and modification of Ameritrust's claim;

4. The Debtor may not deduct hypothetical costs of sale from Ameritrust's claim under § 506(a), but may subtract $8918.80 for real estate tax liens and $10,876.49 as the value of the first mortgage; and

5. The Debtor is given the opportunity to amend his plan and the interest rate paid on Ameritrust's allowed secured claim.