**In re Noel CRAIN and Pamela Crain, Debtors.**

**Noel Crain and Pamela Crain, Plaintiffs,**

v.

**PSB Lending Corporation, Defendant.**

**Bankruptcy No. LA 98–43981–VZ. Adversary No. LA 98–03791–VZ.**

United States Bankruptcy Court, C.D. California.

Dec. 1, 1999.

Manfred Schroer, Diamond Bar, CA, for plaintiffs.

Michael M. Wintringer, Solomon, Grindle, Silverman & Spinella, San Diego, CA, for defendant.

### OPINION RE: VOIDING UNSECURED LIENS IN CHAPTER 13 CASES

VINCENT P. ZURZOLO, Bankruptcy Judge.

## I. INTRODUCTION

Noel and Pamela Crain ("Plaintiffs" or "Debtors") are the plaintiffs and PSB Lending Corporation ("Defendant") is the defendant in this adversary proceeding. Plaintiffs brought this adversary proceeding against Defendant in order to void Defendant's lien on the Plaintiffs' principal residence ("Subject Property") pursuant to 11 U.S.C. § 506(d).[1] Once upon a time, under the plain language of § 506(d), a lien could be voided to the extent it was unse-

---

1. Disputes pursuant to § 506(d) lien voiding must be brought by adversary proceeding, not by motion. Federal Rules of Bankruptcy Procedure 7001.

cured. Despite the plain language of § 506(d) and the universal application of Chapter 5 of the Bankruptcy Code to all bankruptcy cases pending in chapters 7, 11, 12, and 13, courts have construed § 506(d) to have different meanings depending upon the facts of the instant case. My task is to decipher the present state of the law on § 506(d) and determine whether Defendant's lien is void. The relevant facts are not contested and are recounted below.

## II. STATEMENT OF FACTS

Defendant holds a duly recorded, second priority deed of trust (the "Lien") that is secured only by the Subject Property. The Subject Property is the Debtors' principal residence within the meaning of 11 U.S.C. § 1322(b)(2). The Debtors filed a Chapter 13 petition on August 21, 1998. As of that date, the total amount of Defendant's claim was approximately $42,759.62 and the fair market value of the Subject Property was $125,000.00. In addition, as of that date, the principal balance owing to the first deed of trust holder, Countrywide Mortgage ("1st DOT Holder") on the Subject Property was $130,933.00.

The fair market value of the Subject Property as of the date of the confirmation hearing is $133,000.00. As of that date, the principal balance owed to the 1st DOT Holder is $129,750.00.

If the Subject Property is valued as of the petition date, Defendant's lien is completely unsecured.[2] If the Subject Property is valued as of the date of the confirmation hearing, Defendant's lien is partially undersecured.[3]

## III. ISSUES

Plaintiffs and Defendant present three issues to be resolved:

A. Is the Lien void pursuant to Bankruptcy Code § 506(d) in light of Bankruptcy Code § 1322(b)(2) and the United States Supreme Court's decisions in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *In re Nobelman*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)?

B. If the Lien can be voided, what is the applicable date of valuation for the Subject Property?

C. If the Lien can be voided, when is the Lien rendered void?

## IV. ANALYSIS OF ISSUES

### A. 11 USC 506(d): Plain language

A statute is to be construed in its plain language absent contrary authority. *Jeffries v. Wood*, 114 F.3d 1484 (9th Cir.1997), cert. denied (1997). *Connecticut National Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Section 506(d) provides that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." 11 U.S.C. § 506(d). Under the plain meaning of § 506(d), an undersecured lien is void to the extent the claim exceeds the value of the collateral.

Pursuant to 11 U.S.C. § 103(a), § 506(d), as a part of Chapter 5 of Title 11 of the United States Code, applies in "a case under chapter 7, 11, 12, or 13 of this Title". Therefore, § 506(d) applies uniformly in all relevant chapters of bankruptcy. Despite the clarity of the statute's

---

**2.** Fair market value of the Subject Property as of the date of the petition ($125,000) minus the Principal balance owed to 1st DOT Holder ($129,750) = negative $4,750 in equity left in the Subject Property.

**3.** Fair market value of the Subject Property as of the confirmation hearing ($133,000) minus the Principal balance owed to the 1st DOT Holder ($129,750) = $3250 of equity left that partially secures the Defendant's claim of $42,759.62.

language, courts have construed § 506(d)'s lien avoidance provision differently, depending upon the particular facts of the dispute before them.

## B. Judicial Deconstruction of 506(d)

1. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992):

The case that gave birth to confusion on the § 506(d) lien voiding issue is *Dewsnup v. Timm, supra.* The Dewsnups were chapter 7 debtors who owned farmland that was worth less than the amount of debt encumbering it. They filed an adversary proceeding seeking to void the unsecured portion of the undersecured lien.

The parties to the adversary proceeding disagreed in their respective construction of § 506(d) and therefore, the *Dewsnup* majority concluded that there was an ambiguity in the statute. *Dewsnup* at 417, 112 S.Ct. 773. The Court stated that "given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Dewsnup* at 417, 112 S.Ct. 773. The Court also concluded that a lien is *not* void to the extent that is secures a claim that is unsecured within the meaning of § 506(a) and is void only to the extent that the claim it

secures is disallowed under 11 U.S.C. § 502.[4]

The *Dewsnup* majority attempted to limit its holding to the facts before it and stated "[H]ypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day." *Dewsnup* at 416, 112 S.Ct. 773. The holding therefore was not a definitive resolution of the conflict between two different constructions of § 506(d), but rather a limited application of the statute to a particular set of facts.

In his dissenting opinion, Justice Scalia could find no ambiguity in the language of § 506(d). As he stated in his conclusion, "[H]aving taken this case to resolve uncertainty regarding one provision, we end by spawning confusion regarding scores of others." *Dewsnup* at 436, 112 S.Ct. 773. Unfortunately, Justice Scalia's prophecy was all too accurate.

## 2. Post-*Dewsnup* Cases and Commentary

The *Dewsnup* decision originated a great deal of case law and commentary on the interpretation of § 506(d).[5] *Please see*

---

4. 11 U.S.C. § 506(a) provides as follows:
   "An allowed claim of a creditor by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent to the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

5. This graph contains many of the published opinions in which courts have applied *Dewsnup* in Chapter 13 cases.

| Chapter 13 Cases Where Lien Voiding is Permissible | Chapter 13 Cases Where Lien Voiding is Not Permissible |
| --- | --- |
| *Richards v. Citicorp Mortgage, Inc.*, 151 B.R. 8 (Bankr.D.Mass., 1993): lien voiding is permissible to the extent that the claim is unsecured. *In re Jones*, 152 B.R. 155 (Bankr.E.D.Mich., 1993) | *Harris v. Barclay*, 1992 WL 33843 (Bankr.E.D.Pa., 1992) *Taras v. Commonwealth Mortgage Corporation of America*, 136 B.R. 941 (Bankr.E.D.Pa.1992) *Zeigler v. Lomas and Nettleton Company*, 1992 |

Barry E. Adler, *Creditor Rights after Johnson and Dewsnup*, 10 Bankr.Dev.J. 1 (1993–4); Rosemary Williams, *Special Commentary: Bifurcation and Avoidance, or "Stripping", of Liens, Security Interests, and Encumbrances held by Undersecured Creditors by Rehabilitating and Liquidating Debtors in Bankruptcy*, 158 A.L.R.Fed. 1 (1999) and the cases cited and discussed therein.

3. *In re Taffi*, 144 B.R. 105 (Bankr. C.D.Cal.1992)

The Taffis (the "Debtors") owed the Internal Revenue Service ("IRS") $496,940 for tax liabilities that arose in 1980 and 1981 (the "IRS Claim"). The IRS recorded and perfected a tax lien on the Debtors personal residence, behind liens that totaled $233,942.38. The fair market value of the residence was $300,000 if sold to a fully-informed buyer under normal market conditions and the liquidation value was valued at $240,000. The Debtors filed a chapter 11 bankruptcy petition on May 22, 1991 and commenced an adversary proceeding against the IRS to disallow the unsecured portion of the tax lien under § 506(d).

As I stated in *Taffi*, I disagree with the *Dewsnup* majority's construction of § 506(d) and the subsequent confusion it has created. However, I am bound by decisions made by the Supreme Court. Upon application of the decision of *Dewsn-* up to the facts in *Taffi*, I concluded that *stare decisis* mandated that the tax lien was not void simply because the IRS was undersecured.

On appeal, the U.S. District Court reversed on other grounds and the Ninth Circuit Court of Appeals affirmed the district court on these other grounds. Neither appellate court addressed the § 506(d) issue. *Taffi v. United States*, 96 F.3d 1190 (9th Cir.1996).

4. *In re Nobelman*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)

The Nobelmans owed American Savings Bank $71,335 in principal, interest, and fees (the "Claim") on a note secured by the Nobelmans' home. The Nobelmans defaulted on their payment obligations and sought relief under Chapter 13 of the Bankruptcy Code. Under the Nobelmans' modified Chapter 13 plan, the residence was valued at $23,500. The United States Supreme Court held that § 1322(b)(2) prohibits chapter 13 debtors from bifurcating an undersecured homestead mortgagee's claim into a secured and unsecured claim and reducing the mortgage to the fair market value of the mortgage residence.

§ 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or

*McDonough v. Plaistow Cooperative Bank*, 166 B.R. 9 (Bankr.D.Mass., 1994): lien voiding is permissible where lien is a judicial lien.
*In re Hendrix*, 179 B.R. 519 (Bankr.E.D.Kentucky 1994): lien voiding of unsecured portion of lien is permissible.
*In re Young*, 199 B.R. 643 (Bankr.E.D.Tenn., 1996): modification of a claim secured by homestead is permissible if the last payment on the claim falls due before the final payment under chapter 13 plan is due.
*In re Strong*, 203 B.R. 105 (Bankr.N.D.Ill., 1996): limits *Dewsnup* to chapter 7 cases.
*In re Geyer*, 203 B.R. 726 (Bankr.S.D.Ca., 1996): lien voiding is permissible where the lien is wholly unsecured.

WL 50006 (Bankr.E.D.Pa., 1992)
*In re Dyer*, 142 B.R. 364 (Bankr.D.Ariz., 1992)
*In re Barnes*, 207 B.R. 588 (Bankr.N.D.Ill., 1997): No lien voiding even where claim is wholly unsecured.
*In re Pearson*, 214 B.R. 156 (Bankr.N.D.Ohio, 1997)
*In re Tanner*, 223 B.R. 379 (Bankr.M.D.Florida, 1998)

of holders of unsecured claims, or leave unaffected *the rights* of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (*emphasis added*)

The Court focused on the non-modification of the rights of holders of such claims, *not* of the claims. Under Texas state law, the bank's rights are embodied in the relevant mortgage instruments which include *inter alia*, "the right to payment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure" *Nobelman* at 329, 113 S.Ct. 2106. The bifurcation of the bank's lien into a secured and unsecured claim and reduction of the lien to the fair market value of the property would in effect modify the "rights" of the bank, contrary to the language of § 1322(b)(2). Therefore, the Court held that a lien could not be avoided.

Even though *Nobelman* involved an undersecured lien creditor, the *Nobelman* court emphasizes § 1322(b)(2)'s prohibition against limiting the lender's "rights" as a claim holder. "These are the rights that were bargained for by the mortgagor and mortgagee ... and are rights protected from modification by § 1322(b)(2)." *Nobelman* at 329–330, 113 S.Ct. 2106. Thus the Court's language seems to indicate that even if the value of the collateral was zero, the lien cannot be voided under §§ 1322(b)(2) and 506(d) since the secured creditor still holds a deed of trust on the principal residence and its rights are determined under state law.

5. 1994 Amendments: 11 U.S.C. § 1123(b)

The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, effective October 22, 1994, added § 1123(b)(5) which mirrors the language of § 1322(b)(2) to prohibit the modification of the **rights** of a holder of a claim secured only by a security interest in the debtor's principal residence. This statutory amendment extends the holding of the *Nobelman* court to lien voiding attempts in chapter 11 cases. It also dictates the conclusion I reached in *Taffi*.

Therefore, the analysis in *Nobelman* regarding the application of § 1322(b)(2) in chapter 13 cases would parallel a factually similar case in chapter 11 after the effective date of the Bankruptcy Reform Act of 1994.

6. *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997):

The 9th Circuit Bankruptcy Appellate Panel (the "BAP") distinguished the facts in this chapter 13 case from those in *Nobelman* and concluded that the Bankruptcy Code's antimodification provision, § 1322(b)(2) does not extend to secured creditors holding "totally unsecured claims." *Lam* at 41. The creditor, Investors Thrift Co. held a wholly unsecured 4th deed of trust on the debtor's primary residence. The 9th Circuit BAP distinguished the holding in *Nobelman* by stating that the *Nobelman* court found that § 1322 focused on the rights of holders of secured claims rather than on the value of the claim. Thus, in the case of wholly unsecured claims, § 1322(b) is not applicable and the lien is voidable pursuant to § 506(d).

*Lam* was appealed to the 9th Circuit Court of Appeals and was subsequently dismissed for failure to prosecute on October 4, 1999, thus finalizing the order entered by the 9th Circuit BAP. *In re Lam*, 192 F.3d 1309, 1999 Daily Journal D.A.R. 10381 (1999). The *Lam* court offered no satisfactory explanation for ignoring the rights held by the trust deed holder in *Lam* pursuant to its contract with the *Lam* debtors **and** under applicable state or non-bankruptcy law.

## C. *Stare Decisis* and BAP decisions

■ As a bankruptcy trial court in the 9th circuit, I am bound by the decisions made by the Supreme Court of the United States and the 9th Circuit Court of Appeals. The judge-created rule of *stare decisis* is crucial to the efficient operation of the federal judicial system. If inferior courts do not adhere to the precedents of the U.S. Supreme Court and circuit courts of appeal, the inferior courts usurp the role of the appellate courts and ultimately, Congress, which acts as the primary maker of law in our system of government.

■ The decisions of the BAP, however, do not carry the weight of *stare decisis. In re Bank of Maui*, 904 F.2d 470, 471 (9th Cir.1990). The decisions of the BAP are binding only on the judges whose orders have been reversed or remanded by the BAP in that particular dispute. In all other instances, BAP decisions are, at best, persuasive authority.[6]

## D. *Obiter Dictum*

■ I am bound to follow the Supreme Court's decisions in *Nobelman* and *Dewsnup*. To the extent that the Defendant's lien is at least partially secured by the Crain's principal residence, the Defendant's lien is not void per *Nobelman*. Under those decisions I conclude that the Defendant's lien cannot be voided, whether it is fully or only partially secured. The issue that should first be decided, and that renders the preceding sentence *obiter dic-*

*tum*, is the applicable date of valuation for the Subject Property.

It is undisputed that if the Subject Property is valued as of the date of the filing of the petition at $125,000, then Defendant would have a wholly unsecured junior lien and I must determine the persuasiveness of the BAP opinion in *Lam*. On the other hand, if the subject property is valued as of the date of the confirmation hearing at $133,000, Defendant would have a partially secured lien and the lien indisputably would not be voidable per *Nobelman*.

## E. Applicable Date of Valuation of Collateral in a Chapter 13 case pursuant to 11 U.S.C. § 1325(a)(5)(B)

■ To confirm a chapter 13 plan, the debtor must treat each allowed claim under the plan. The requirements for confirmation are set forth in 11 U.S.C. § 1325. The relevant portions are outlined as follows:

Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided by for by the plan—(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, ***as of the effective date of the plan,*** of property to be distributed under the plan on account

---

6. It is controversial whether BAP decisions are binding on bankruptcy judges. *See* Daniel J. Bussel, *Power, Authority and Precedent in Interpreting the Bankruptcy Code,* 41 UCLA L.Rev. 1064. The bankruptcy courts that have concluded that BAP decisions are not binding do so because the doctrine of *stare decisis* is a judge created doctrine meant to function within a single track appellate system, where decisions are binding on courts on the same level or below. The problem is that bankruptcy judges operate in a dual track system where decisions by BAP judges are not binding on district court judges and decisions by district court judges are not binding on BAP judges. An additional complexity is that the decision of one district court judge is not binding on his or her colleague. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211 (1996). You thus have a binary level of appellate review that has no self imposed decisional consistency.

It would be good to have clear direction from Congress, the United States Supreme Court, or the 9th circuit stating that BAP decisions are binding on bankruptcy judges. This appears to be the rationale behind those who treat BAP decisions as binding. The only decision guiding us in this matter, however, is *Bank of Maui, supra*, which states that BAP decisions are not binding on bankruptcy judges.

of such claim is not less than the allowed amount of such claim[.] [7]

The language above has been interpreted to mean that a chapter 13 plan can be confirmed with respect to a secured creditor where the plan provides that the secured creditor retain its lien and be paid the value of its collateral as of the "effective date of the plan". 11 U.S.C. § 1325(a)(5)(B). *In re Jones*, 219 B.R. 506 (Bankr.N.D.Ill.1998). 11 U.S.C. § 506(a) requires collateral to be valued "... in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." In this case, Debtors ask me to value the Subject Property for the purpose of determining the appropriate treatment of Defendant's claim. Therefore, I conclude that the correct date for valuation of the Subject Property is the effective date of Debtors' plan.

Neither the Bankruptcy Code nor legislative history defines "effective date of plan". Though various courts have proposed different dates for the purpose of valuation of collateral, I will focus on case law that has interpreted the meaning of "effective date of the plan" in light of the applicability of § 1325(a)(5)(B) to the present set of facts in a chapter 13 bankruptcy case. There are two different dates that have been used by courts for similar valuations. The first line utilizes the date of the chapter 13 confirmation as the "effective date of the plan". The second line utilizes the date that the chapter 13 case is commenced.

### 1. Date of Chapter 13 Confirmation Hearing

§ 506(a) states that the value of collateral "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Many cases have interpreted this provision to mean valuing the collateral as of the date of the chapter 13 confirmation hearing. *In re Owens*, 120 B.R. 487 (Bankr.E.D.Ark. 1990). *In re Klein*, 10 B.R. 657 (Bankr. E.D.N.Y.1981). On first glance, this date seems most logical since the proposed use or disposition of the collateral is determinable at this time in light of the pending chapter 13 plan. The court in *Klein*, *supra*, speaks to the "effective date of the plan" as the controlling date for valuation. However, the court does not define clearly what "effective date of the plan" means and chooses the date of the valuation hearing as the proper date, provided that confirmation of the plan follows shortly thereafter.

As discussed above, the proper valuation date is the "effective date of the plan". Technically, a chapter 13 plan does not become effective on the date of the confirmation hearing. Even if the chapter 13 plan is confirmed on the date of the confirmation hearing, the order approving the plan becomes effective when entered. Federal Rules of Bankruptcy Procedure 9021. The confirmation order, which is not excepted under FRBP 7062, is then automatically stayed for ten days and becomes final only after any timely appeals have been resolved or the ten days have passed. Federal Rules of Bankruptcy Procedure 7062(a).

The court in *In re Jones*, 219 B.R. 506 (Bankr.N.D.Ill., 1998) comes closest to the definition of "effective date of the plan" by referencing the plan confirmation date as the appropriate measure of time. However, the *Jones* court fails to take into ac-

---

7. Section 101 of Title 11 provides definitions for many terms used throughout the Bankruptcy Code. This section does not contain a definition for the term "effective date of plan". The legislative history of § 1325(a)(5)(B) does not contain a definition of the term "effective date of plan", nor any definitive statement regarding when the plan is effective.

count the automatic ten day stay effective in all orders. Practically speaking though, valuation of property usually does not fluctuate materially from day to day. Since valuation often occurs in conjunction with the confirmation hearing, it is appropriate to value the Subject Property as of the date of the confirmation hearing, provided the plan becomes final and effective soon thereafter.

## 2. Date of the Filing of the Petition

Another date that courts have used to determine the date of valuation of collateral is the date of the filing of the petition. Most of these courts were dealing with valuation involved in exclusively chapter 7 and chapter 11 cases; therefore § 1325(a)(5)(B) which is only applicable in chapter 13 cases was not included in the courts' analysis of the appropriate valuation date. *In re Beard,* 108 B.R. 322 (Bankr.N.D.Ala.1989), *In re Wood,* 190 B.R. 788 (Bankr.M.D.Pa.1996), *In re Hall,* 1 F.3d 853 (9th Cir.1993). These courts start with an analysis of § 502(b) and § 506(a).

§ 506(a) outlines the determination of the secured status of a claim and states "[a]n allowed claim of a creditor secured by a lien on property ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

The courts then go on to conclude that the only logical reading of this language is that the amount of a claim that is secured is determined at the time the petition is filed. However, this reasoning fails to consider the different purposes of § 506(a) and § 502(b).

A plain reading of § 502(b) indicates that the **amount** of a creditor's claim is fixed on the date of the petition filing. There is no language indicating that *the value* of the secured portion of the creditor's claim must also be determined as of the date of the petition filing. In fact, the *Dewsnup* court has stated that a creditor should retain the benefit of any increase in

the value of collateral during bankruptcy. "Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed...." *Dewsnup* at 777.

In the second sentence of § 506(a) Congress provides that the value of collateral "... shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). In this case, Plaintiffs seek a valuation of the Subject Property for the purpose of determining the appropriate treatment of Defendant's claim through Plaintiffs' chapter 13 plan. Thus it is clear that this valuation should occur on or near the time of the chapter 13 confirmation hearing. As of the date of the filing of the petition, the debtor may not know the future disposition of the collateral or the proposed treatment of creditors' claims. It is therefore illogical to set the valuation date as of the date of the filing of the petition when the debtor may not even know what he intends to do with the collateral.

One court did consider the issue in context of chapter 13. The bankruptcy court in *In re Dinsmore,* 141 B.R. 499 (Bankr. W.D.Mich.1992) utilized the date of the filing of the petition as the appropriate date for determining the extent of the lender's collateral for purposes of § 1322(b)(2) only. In *Dinsmore,* the secured lien creditor had a security interest in the debtor's residential and commercial property at the time of the petition filing. Subsequently, the commercial property was foreclosed on and the lien creditor was left with a lien only on the residential property. The court reasoned that "[l]ooking to the date of filing is proper to discourage creditors from disclaiming se-

curity interests post-petition or attempting other tactics to defeat the debtor's ability to modify the treatment of claims." *Dinsmore* at 505–506.

The facts that motivated the *Dinsmore* court to reach its decision do not exist before me; nor do I find its policy reasoning to be persuasive.

### F. Applicable Date of Lien Voiding, if Lien Voiding were Permissible

■ There has been a similar split of authority as to the applicable date to void the lien, assuming lien voiding were permissible in this case. In *Lam*, the BAP remanded the case back to the bankruptcy court for entry of the relief prayed for by the debtors and to "enter a judgment holding the Thrift lien to be an 'unsecured lien and therefore to be treated as an unsecured claim' and that the lien has 'no further force and effect as a secured lien against the Debtors' residential property'". *Lam* at 37. In essence, the lien was to be voided at the time the judgment was entered. I concur with this conclusion in *Lam*. There is no language in § 506(d) that conditions the voiding of a lien on the consummation of a plan.

This conclusion in *Lam* however, creates the following anomaly. If a lien is voided pursuant to § 506(d) in a chapter 13 case and the debtor then either inadvertently or intentionally converts the case to one under chapter 7 and receives a discharge, the lien is still void and the unsecured debt discharged. 11 U.S.C. § 348, which governs conversion of bankruptcy cases from one chapter to another, does not contain any language that addresses voided liens. 11 U.S.C. § 349 reinstates a voided lien only to the extent the case is **dismissed.**

Thus, under *Lam*, a chapter 13 debtor could confirm a plan, void a fully unsecured lien, convert her case to one under chapter 7, discharge the now unsecured claim and never consummate the treat-

ment of the trust deed holder's claim proposed in the debtor's chapter 13 plan. Such a result is not only fundamentally unfair, but it also contravenes the holding of *Dewsnup* through some procedural sleight-of-hand. The *Lam* court did not discuss this consequence of its decision.

Some of my colleagues in the San Fernando Valley division of the Central District of California recently held that a lien is not void until a chapter 13 plan has been consummated.[8] Though they claim to be bound by and to follow *Lam*, they do not. *Lam* states that the lien is rendered void when the judgment is entered. Their conclusion is contrary to *Lam* and contrary to the Code. § 506(d) states that "[T]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is **void** . . . ." The statute does not say the lien is void after consummation of a plan. My colleagues attempted to address the anomaly described above, but in the process have attempted to legislate a matter within the power of the legislature, not the judiciary.

## V. CONCLUSION

We've come full circle in the statutory interpretation of § 506(d). At first glance, the plain language of § 506(d) dictates that **all** unsecured liens were voidable in all chapters of the Bankruptcy Code. After the decisions in *Dewsnup* and *Nobelman* and the 1994 Amendment 11 U.S.C. § 1123(b) however, liens secured only by the debtor's primary residence are not voidable in chapter 11 and 13 cases to the extent a lien is secured by a principal residence and in chapter 7 cases where a lien is undersecured.

With *Lam* and other decisions, courts continue to fashion a patchwork quilt of decisional law that is inconsistent and confusing. Congress needs to develop a clear and comprehensive lien avoidance scheme

---

8. Defendants cite to the Joint Memorandum of Opinion in their Trial Brief. *In re Anderson/Campagne/Bailey* (Unpublished in

the plain meaning of the term "published", but available for review at www.cacb.uscourts.gov).

that not only clarifies when lien voiding is allowed, but also closes any loopholes amongst the different chapters of bankruptcy.

Based on the foregoing findings of fact and conclusions of law, I conclude that the appropriate date of valuation for the Subject Property is the "effective date of the plan" or ten days after entry of the order confirming the plan, provided no timely appeal has been made. Practically speaking, the date of the confirmation hearing will be used and I find that for purposes of § 506(d), the value of the Debtors' principal residence is $133,000. Since the Defendant in this case has at least a partially secured claim, I conclude that its lien cannot be voided.

The above constitutes my findings of fact and conclusions of law.