**In re Rhea HUDOCK, Debtor.**

**Bankruptcy No. 88 B 03185.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 8, 1991.

---

115 B.R. 1011 (Bankr.Mo.1990); *In re Robinson Bros. Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989).

Brian C. Pedersen, Kenneth S. Borcia, Libertyville, Ill., and Terry Long, Sherman & Sherman, Chicago, Ill., for Ford Motors.

Robert J. Adams, Chicago, Ill., for debtor.

Craig Phelps, Chapter 13 standing trustee, Chicago, Ill.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor in this chapter 13 case objected to the secured claim of Ford Motor Credit Company. The parties agree that the amount of the secured claim that should be allowed is $6,500. The disputed issue raised by the objection is the appropriate discount rate that should be applied to determine the present value of the payments to be made under the Debtor's plan on Ford's allowed secured claim. Under section 1325(a)(5)(B)(ii) of the United States Bankruptcy Code, that present value must be at least $6,500, the amount of the allowed secured claim. For the reasons stated below, the Court will apply the Continental Illinois National Bank's prime rate as of the date of filing.[1]

*The Facts and Parties' Contentions*

The Debtor financed the purchase of a new Ford Escort by signing a retail installment agreement under which she was to pay $9,650.62 over five years plus interest at a rate of 12.75%. After four contract payments she defaulted and subsequently filed a chapter 13 petition. Ford Motor Credit filed its claim based on that installment agreement. The parties now agree that the fair market value of the car is $6500. Therefore, under section 506(a) of the Bankruptcy Code, $6,500 is the allowed amount of Ford's secured claim and, under section 1325(a)(5)(B)(ii), the Debtor's proposed payments to Ford under her plan must have a present value of that amount.

The only question is what discount rate will produce that result, or, put another way, what is the interest rate that the Debtor must pay on the $6,500. The creditor urges the Court to apply the contract rate (12.75%), or, alternatively, the current market rate for similar retail consumer loans. The Debtor asks the Court to apply the federal statutory rate (28 U.S.C. § 1961) applied to federal judgments, which is based on treasury bills and is now 6.74%. We reject both approaches.

*The Law*

A secured creditor in a chapter 13 case is entitled to receive payments under the plan that total at least the value of its interest in the collateral as of the effective date of the plan. 11 U.S.C. §§ 506(a) and 1325(a)(5)(B)(ii). In order to find that value, the Court must apply a discount rate. The customary method of finding that rate is explained by Collier as follows: "The appropriate discount rate is one which approximates the creditor's cost of funds in its business borrowing. If the holder of an allowed secured claim receives interest which compensates it in full for any additional interest costs incurred due to the deferral of payment, it is not harmed by that deferral." 5 Collier on Bankruptcy § 1325.06[4][b][iii][B] at 1341.

Although Collier looks to the creditor's cost of borrowing, courts have considered other measures of the appropriate cost of funds.[2] Some courts have looked to the retail credit market, using rates paid by consumers on similar loans. In *Memphis*

1. Such an order has already been entered. This opinion is issued after the order so that other counsel and parties will know about this Court's practice and the reasons for it.

2. Although this is a Chapter 13 case, cases in Chapter 11 and 12 are useful. Chapter 11 plans require present value findings and the statutory language, "value as of the effective date of the plan," is identical in § 1325(a)(5)(B)(ii), § 1129(a)(9)(B) and (C), and § 1225(a)(5)(B)(ii). *In re Camino Real Landscape Maint. Contractors,* 818 F.2d 1503, 1506–07 (9th Cir.1987). For a general discussion of cases under all three chapters, see Kressel, "Calculating the Present Value of Deferred Payments Under a Chapter 12 Plan," 62 Am.Bankr.L.J. 313 (1988).

*Bank & Trust Company v. Whitman*, 692 F.2d 427 (6th Cir.1982), the Sixth Circuit adopted the current market rate of interest on similar loans in the region. The District Court in *In re Shannon*, 100 B.R. 913 (S.D.Ohio 1989), used the same approach, but added that the current market rate should be evaluated on a case by case basis, with the court considering such factors as the length of the plan, the amount and quality of the collateral, and any relevant risk factors. In *Matter of Clements*, 11 B.R. 38 (N.D.Ga.1981), the court determined that the contract rate was presumptively the correct rate.

On the other hand, the court in *In re Fisher*, 29 B.R. 542 (Bkrtcy.D.Kan.1983), took the treasury bill rate as providing a risk-free basis, and then added a risk factor of 1%. In this district, Judge Merrick reached a similar result in *Matter of Willis*, 6 B.R. 555 (Bkrtcy.N.D.Ill.1980), finding that the three month treasury bill rate plus .5% approximated a typical finance company's cost of borrowing.

To begin, we note that the Bankruptcy Code protects the creditor's interest in the property, not the creditor's interest in the profit it had hoped to make on the loan. *Fisher*, 29 B.R. at 546. When, as here, the debtor is allowed to keep the collateral, the creditor has to borrow the funds that otherwise it would realize from selling the collateral. To protect the creditor's property interest, the discount rate should be comparable to its cost of borrowing. To set the discount rate at the contract rate or the retail consumer rate would be to award the institutional creditor, such as Ford Credit Company, a higher rate than it would have to pay to borrow. *Cf. Willis*, 6 B.R. at 563.

Alternatively, the treasury bill rate, what the government pays to borrow money, would not protect the creditor's interest in the property, because even a major finance company must borrow at a higher rate than the government. Recognizing this, a number of cases have used the Treasury Bill rate and then added a risk factor, usually ½% to 2%. Kressel, 62 Am.Bankr.L.J. at 317–18. While this approach acknowledges that commercial borrowers do not qualify for the government rate, it necessarily involves either arbitrary speculation or ongoing financial risk assessment by the courts. In a chapter 13 case involving a Ford Escort, it is possible that the parties may not present the expert testimony that would support such an assessment, throwing the court back onto speculation.

The appropriate discount rate is the rate at which Ford Motor Credit Company borrows the money it then uses to make loans to consumers. Since Ford's cost of borrowing $6,500 will be paid by the debtor, the net effect from Ford's point of view would be the same as if it actually sold the car for $6,500 and used that money in its business. Of course, this assumes that the debtor will comply with the plan and some courts have taken into account the risk of debtor-default in arriving at a discount rate. *See Fisher* 29 B.R. at 544–46 for a discussion of this "coerced loan theory." But section 1325(a) does not, by its terms, require treating the plan like a forced loan. Rather, it only requires that the plan provide that the "property to be distributed" have a present value equal to the amount of the claim. This language does not contemplate the risk of non-compliance with the plan.

In choosing a rate, there are other criteria. It should be applicable to a wide variety of situations, easy to determine, and it should adjust to reflect changing market conditions. For all these reasons, this Court selects the prime rate. The prime rate is the actual cost of money for a reliable borrower, and allows the market to make the necessary risk assessment. Although the market assessment reflected in the prime rate may not be precisely correct (in the sense that if evidence were taken in each and every case, the rate in some cases might be lower and in others higher), the advantages of the prime rate (it is quickly and easily ascertainable and it is a commercial—rather than government or retail—borrowing rate) outweigh the disadvantage of that imprecision.

The next question is which date to select for determining the discount rate. In other words, should the discount rate be the prime rate on the date the chapter 13 petition was filed, the date of confirmation or some other date. Section 1325(a)(4) of the Bankruptcy Code itself says the value to be paid is "as of the effective date of the

plan." There are considerable practical problems with that date, which is usually the same as the date of confirmation. The creditor could not know the value of its claim until confirmation, and the trustee and debtor could not calculate the amount of payments required under the plan until after the plan's confirmation. In most cases, the difference between the prime rate at the time of filing and confirmation will be trivial. In cases where the difference is significant, one of the parties can raise the issue at confirmation.

For these reasons, the discount rate applicable in this and similar cases will be the Continental Illinois National Bank prime rate on the date the case was commenced.