**In re Donato YRLAS, Jr., Debtor.**

**Bankruptcy No. 393–37465–SAF–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 11, 1995.

**120**

Dahlia M. Gutierrez, Dallas, TX, for movant Ryland Mortg. Co.

Kathleen A. Klinck, Law Offices of Wolfe & Kincade, Irving, TX, for debtor.

Charles L. Kennon, III, Office of the Standing Chapter 13 Trustee, Dallas, TX, for the Standing Chapter 13 Trustee.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

The debtor, Donato Yrlas, Jr., moves the court to confirm his Chapter 13 plan filed January 20, 1995. Ryland Mortgage Company objects. The court conducted a hearing on the motion on March 23, 1995.

At issue is the debtor's proposed treatment of the pre-petition arrearage of mortgage payments owed Ryland. Ryland holds a claim secured by a security interest in real property that is the debtor's principal residence. The debtor proposes to pay the pre-petition arrearage of $4,751.78 plus interest calculated at 6.5% per annum over 28 months. Ryland agrees with the amount of the pre-petition arrearage and does not object to the payout over 28 months. Ryland contends, however, that the interest should be calculated at 12¼%.

■ Before addressing the merits, the court will address the timeliness of the objection. The debtor filed his original proposed plan on November 12, 1993. Ryland timely objected to that plan. The debtor amended the plan, resolving Ryland's objections except the interest rate. Ryland did not file a new objection. The debtor thereby assumed that Ryland was not pursuing its interest rate objection. The debtor contends that Ryland should be precluded from now renewing the objection. The court concludes, however, that because the amended plan did not address the interest rate objection, the debtor should have anticipated that Ryland would renew the objection at a confirmation hearing. The court will therefore address the objection on the merits.

■ The Chapter 13 plan cannot alter the terms and conditions of Ryland's note and deed of trust. 11 U.S.C. § 1322(b)(2); *In re Nobelman,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The plan may, however, provide for the payment of the pre-petition arrearage. 11 U.S.C. § 1322(b)(5). Regard-

less of the contract between the parties, the Supreme Court reads the Bankruptcy Code, as applicable to this case, as requiring interest payments on the arrearage to assure payment of the present value of the arrearage. *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2193, 124 L.Ed.2d 424 (1993). Although *Rake* involved an oversecured creditor, the court assumes that the holding on present value interest on the arrearage would apply to an undersecured mortgage creditor. [Congress has now amended the Code to restrict the parties to their contract and non-bankruptcy law. 11 U.S.C. § 1322(e). This amendment does not apply to this case.] The court must decide what interest rate to apply.

Ryland contends that the note requires a 12¼% rate on the arrearage. Alternatively, Ryland contends the court should apply a "market rate," but offers no evidence to aid the court in determining either the market or the rate. For ease and efficiency of administration the Standing Chapter 13 Trustee recommends a 10% rate, which both sides reject. The debtor maintains that 6.5% will assure the present value of the arrearage but offers no evidence to support that position.

The note provides 12¼% per annum interest on the principal amount of the loan. The note further provides "The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note." The debtor defaulted pre-petition. The debtor cannot alter the terms and conditions of this note. The debtor must therefore pay 12¼%. The debtor proposes to do just that. The debtor will make all post-petition payments per the note, with those payments calculated at 12¼%. The debtor has included the 12¼% due on the pre-petition payments in the plan. The debtor has also included the penalty charge for late payments. The court does not read the note to impose an additional 12¼% per annum interest on the arrearage calculated to include the 12¼% plus late charges already due and owing.

■ Since the Supreme Court reads the Bankruptcy Code as imposing an interest rate on default cure payments under § 1322(b)(5) to assure present value, the amortized payments including the interest rate and the late charges notwithstanding,

the court must determine the rate. Since the parties provided no evidence to support a court finding, the court could continue the confirmation hearing for further evidence. That would impose an unnecessary expense on the debtor. Where pertinent interest rates may be recognized by judicial notice, the Chapter 13 debtor should not now be forced to incur additional litigation expenses which would hamper the very purpose of Chapter 13, to give the debtor an opportunity to pay the arrearage.

The Supreme Court instructs that Ryland should receive the present value of the arrearage. In reviewing a bankruptcy court's findings of fact concerning the interest rate for purposes of § 1129(b)(2)(A)(i) (for deferred cash payments), the Fifth Circuit has held that the contract rate may be appropriate but that reference to a similar maturity Treasury rate is instructive. *Matter of Briscoe Enterprises, Ltd., II,* 994 F.2d 1160, 1168–69 (5th Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). The Treasury rate includes necessary factors to be considered plus risk factors for the particular case.

■ In considering the present value rate for allowed secured claims, other than a principal residence, provided for by a Chapter 13 plan under § 1325(a)(5)(B)(ii), this court, the Honorable Robert C. McGuire, Chief Judge, presiding, held that the court should employ a market rate for similar loans made by the particular creditor. *In re Janice W. Hollins,* 185 B.R. 523 (Bankr.N.D.Tex.1995) (car loans). For purposes of § 1322(b)(5), the sole issue before the court, this judge must respectfully disagree. A market rate does not necessarily equate to a present value rate. Most market rates of interest seek a better return than merely preserving the present value of money. A lender can look to the Treasury to merely preserve the present value of its money without creating a market. The Supreme Court's reading of the statute only required "present value." For the original mortgage on the principal residence, the market rate has already been factored into the amount of the arrearage. If the creditor receives the present value of that amount, the creditor will have realized its market which set the mortgage interest rate included in the arrearage in the first

place. Although discussed in *Hollins, Matter of Rash*, 31 F.3d 325, 331 (5th Cir.1994), does not instruct the bankruptcy courts to apply a market rate for present value purposes. *Rash* involved determining the value of a claim, not the interest to be paid on that claim as so valued. With the principal residence in Chapter 13, the note includes the mortgage market rate of interest, which must be included in the arrearage to be paid in a plan and which cannot be altered in post-petition payments to the creditor. The recent amendments to the Code establish that Congress considers present value and market rates to be different concepts and provides for market rates when it so intends. *Compare*, 11 U.S.C. § 362(d)(3)(B) *with* § 1322(b)(5), § 1325(a)(5)(B)(ii) and § 1129(b)(2)(A)(i).

■ Present value is achieved by assuring Ryland a return based on a measurement that includes all necessary factors plus basis points to reflect any appropriate risk of payment by the debtors. That is measured by the Treasury security closest in time to the length of payments plus, in this case, 2% to reflect the risk of payment by a Chapter 13 debtor on his home.

■ The debtor filed his Chapter 13 petition on November 1, 1993. Present value interest should run from that date. Although included in a Chapter 13 plan, the court concludes that the present value rate should not be calculated as of the effective date of the plan under § 1325(a)(5). Because this is an arrearage on a home mortgage the terms and conditions of which cannot be altered by a plan, the present value interest should run from the petition date. As of that date, the pre-petition arrearage, including amortized principal and interest, is fixed in amount. The creditor is entitled to the present value of that amount, according to the *Rake* rationale. To accomplish that realization, no less but no more, the date for the present value realization is the petition date. Post-petition, the creditor receives payments based on the terms and conditions of the note. *Rake's* discussion of the accruing of

interest for an oversecured creditor to confirmation does not compel a different result since *Nobelman* recognizes that the terms and conditions of the note cannot be altered by confirmation. The creditor gets the present value of the arrearage as of the petition date, but, based on the *Nobelman* rationale, not more. The court will take judicial notice that the United States Department of the Treasury reports that the 24 month treasury auction on November 22, 1993, had an interest rate of 4.25%. The addition of the 2% risk premium makes a present value rate of 6.25%. The debtor's proposed plan payment based on 6.5% therefore will provide Ryland with the present value of the arrearage.[1]

The court therefore finds that the plan shall be confirmed.

Based on the foregoing analysis,

**IT IS ORDERED** that the debtor's plan filed January 20, 1995, is **CONFIRMED.** The Standing Chapter 13 Trustee shall submit a confirmation order consistent with this opinion and order.

---

1. For this case, the court takes judicial notice that the mortgage market rate on November 1, 1993, as reported in the Dallas Morning News, quoted 30 year mortgages at 6½–6¾%, 15 year mortgages at 6–6¼%, one year adjustable mortgages at 3½–3¾% and a seven year balloon mortgage at 6¼%. The debtor's proposed interest payment for present value would have also met the market rate standard.