**In re Emma A. JONES, Debtor.**

**Bankruptcy No. 97 B 06524.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 31, 1998.

Erik A. Martin, Chicago, IL, for Movant.

Daniel P. Dawson, Nisen & Elliott, Chicago, IL, for Respondent.

Craig Phelps, Chicago, IL, Chapter 13 Trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the bankruptcy case originally filed by Emma Jones ("Debtor") under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* on March 4, 1997. Debtor's Chapter 13 Plan was confirmed May 2, 1997. Money Store Auto Finance, Inc. ("Money Store"), a secured creditor, filed a secured claim in the amount of $21,182.72 for a loan to Debtor to finance the purchase of an automobile ($14,053.13 for the net balance due on the principal loan, plus $7,029.61 in interest). Debtor has objected to this claim, arguing that Money Store is only entitled to an allowed secured claim in the amount of $13,675.00, which Debtor argues is the appropriate retail value of the automobile, and an unsecured claim for the balance of its claim. For reasons stated below, Debtor's objection is allowed, and the secured claim is reduced as requested.

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### Background

As stated, Debtor filed this Chapter 13 on March 4, 1997. Her Plan was confirmed May 2, 1997. In January 1997, Debtor purchased a 1996 Mitsubishi Galant Sedan. Money Store is the first lien holder on this car. Debtor has submitted a copy of the May 1997 National Automobile Dealers Association (NADA) Official Used Car Guide ("May Report"), which lists a retail price for a 1996 Mitsubishi Galant Sedan of $13,675.00. The May Report also allows for additions and deductions to this price for certain accessories.

Money Store's Opposition filed to the Debtor's Motion argues that the appropriate NADA Report to accepted into evidence is that issued in March 1997 ("March Report"),

the time when the bankruptcy petition was filed. According to the March Report, the retail value for Debtor's vehicle was then $15,300.00. That Report provided that a 1996 Mitsubishi Galant Sedan then had a base retail value of $14,250.00. Money Store further argues that the presence of certain valuable accessories and low mileage increases this retail value by $1,050.00 for a total retail value of $15,300.00. Money Store further argues that the interest portion of its claim should also be secured pursuant to § 1325(a)(5)(B)(ii).

No evidence was offered as to what accessories Debtor's car had or as to any damage to Debtor's car which would diminish its value. Indeed, neither side offered any evidence at all except for the May Report and March Report which were, without objection as to authenticity or admissibility, each admitted and considered.

### Discussion

■ Section 1325(a)(5)(B)(ii) provides that, with respect to each allowed secured claim provided for by the plan ... the plan provides that the holder of such claim retain the lien securing such claim; and the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B)(ii). This is often referred to as the Chapter 13 "cram-down provision." Through such a "cram-down," the debtor is able to keep its property and the creditor keeps its lien. However, the debtor is required to provide the creditor with plan payments totaling the present value of the allowed secured claim (i.e. the present value of the collateral). *See Associates Commercial Corp. v. Rash,* —— U.S. ——, —————, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997).

■ The Money Store filed a secured claim for $21,182.74, but that amount is not entirely secured. Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest

in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim ... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Thus, Money Store's claim is only secured to the extent of the value of the collateral, the 1996 Mitsubishi Gallant. *See Rash,* —— U.S. at ——, 117 S.Ct. at 1882 (citing 11 U.S.C. § 506(a)). The Supreme Court opinion in *Rash* stated that "the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business or situation would pay to obtain like property from a willing seller." *Id.* at ——, 117 S.Ct. at 1884. The Supreme Court determined that such property would be valued at its replacement value. "Under § 506(a), the value of the property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same proposed ... use." *Id.* at ——, 117 S.Ct. at 1886. However, the opinion also noted that "whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property." *Id.* at ——, n. 6, 117 S.Ct. at 1886, n. 6.

In this case the retail value would seem to be the appropriate cost the Debtor would incur to obtain a similar automobile. As stated, the value of Money Store's secured claim is the price a willing buyer in Debtor's position would pay to obtain a similar automobile from a willing seller. There has been no evidence presented showing that the Debtor here has any access to the wholesale market. The only market Debtor has access to, absent proof to the contrary, is the retail market. Thus, the retail sale price for Debtor's automobile would be the same price Debtor would likely spend to purchase a similar vehicle, and the retail sales price for a 1996 Mitsubishi Galant would be the value of Money Store's secured claim.

Both parties agree that the retail value is the appropriate value for §§ 506 and 1325. However, both parties have offered different retail values for Debtor's car supported by two different NADA reports.

Thus, the threshold issue is which NADA Report is the appropriate report for determining the value of the Money Store's collateral. The Money Store argues that "effective date of the plan," as used in § 1325(a)(5)(B)(ii), is the date on which the bankruptcy petition was filed.

The Bankruptcy Code does not define the "effective date of the plan," nor does it specifically state which date, the filing date or the confirmation date, is the appropriate date for valuation purposes in a Chapter 13 cramdown. Section 506(a) merely says that the value will be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). It is true that a few precedents have used the bankruptcy case filing date as the appropriate date for valuation purposes. *See In re Johnson,* 165 B.R. 524, 528 (S.D.Ga.1994) ("The date on which the bankruptcy petition is filed and the order for relief is entered is the watershed date of a bankruptcy proceeding."); *see also In re Green,* 169 B.R. 480, 482 (Bankr.S.D.Ga.1994).

Although the text of § 506(a) does not state a specific date, legislative history indicates that determinations of value can vary depending on the purpose for the valuation. *In re Case,* 115 B.R. 666, 670 (9th Cir. BAP 1990).

A determination of what portion of an allowed claim is secured and what portion is unsecured is binding only for the purpose for which the determination is made. Thus determinations for purposes of adequate protection is not binding for purposes of 'cram down' on confirmation in a case under chapter 11.

124 Cong. Rec. H.11095 (daily ed. Sept. 28, 1978); S.17411 (daily ed. Oct. 6, 1978); (remarks of Rep. Edwards and Sen. DeConcini) reprinted in Norton Bankruptcy Rules Pamphlet 1997–1998 Edition, 435. *See also*

S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978) reprinted in Norton Bankruptcy Rules Pamphlet 1997–1998 Edition, 435.

■ "The courts have virtually uniformly recognized that the value of property securing a claim, and thus the allowed amount of the secured claim, may change during the court of a bankruptcy case." 4 *Collier on Bankruptcy,* § 506.03[7][f] (15th Ed. rev. 1996). In the case of a secured creditor's claim in the context of a cram down, the collateral should be valued as of the day the plan is confirmed. *Id.* at § 506.03[10]. The date of confirmation as the date of valuation "insures that the creditor benefits from any post-petition increase in the value of his security." *In re May,* 194 B.R. 853, 857–58 (Bankr.D.S.D.1996) (citing *Dewsnup v. Timm,* 502 U.S. 410, 416–18, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *In re Cook,* 150 B.R. 439, 441 (Bankr.E.D.Ark.1993); *In re Lyons,* 148 B.R. 88, 91 (Bankr.D.D.C.1992); *In re Krahn,* 124 B.R. 78, 81 (Bankr.D.Minn. 1990)). The contrary is of course true if the collateral value diminishes with time as usually happens to automobiles.

Thus, the appropriate reference date is the date Debtor's plan was confirmed in this case, and the value of the 1996 Mitsubishi Gallant and the amount of Money Store's allowed secured claim is $13,675.00, the value given in the May Report. As no evidence was presented as to any sort of accessories with which Debtor's automobile might be equipped, no further adjustments will be made before considering appropriate interest required on the secured part of Debtor's obligation. Thus, Money Store's secured claim in the amount of $21,182.74 will be disallowed and Money Store will be allowed a secured claim in the amount of $13,675.00 and an unsecured claim in the amount of $7,507.74.

### Interest Claim under § 1325(a)(5)(B)

■ Money Store also argues that it is entitled to interest on its entire claim. Pursuant to Bankruptcy Code § 1325(a)(5)(B), a secured creditor in a Chapter 13 case is to receive payments under the plan totaling no less than the value of its interest in the collateral as of the effective date of the plan.

However, the value of Money Store's "interest" is only in the secured value of its principal claim and in a proper rate of interest to be applied thereto, but not in the contract rate of interest thereon. The Bankruptcy Code protects the creditor's secured interest in the property, not the creditor's interest in profit it had hoped to make on the loan. *In re Hudock,* 124 B.R. 532, 534 (Bankr.N.D.Ill. 1991) (J. Barliant).

■ The issue of the appropriate interest rate is determined by the appropriate discount rate which will give Money Store the present value of its secured claim.

> The appropriate discount rate is one which approximates the creditor's cost of funds in its business borrowing. If the holder of an allowed secured claim receives interest which compensates it in full for any additional interest costs incurred due to the deferral of payment, it is not harmed by that deferral.

*Hudock,* 124 B.R. at 533 (citing 5 *Collier on Bankruptcy,* § 1325.06[4][b][iii][B] at 1341). Judge Barliant's thorough analysis of this issue in *Hudock* led him to conclude that the prime rate was an appropriate rate for discounting a secured creditors claim to present value.

> The prime rate is the actual cost of money for a reliable borrower, and allows the market to make the necessary risk assessment. Although the market assessment reflected in the prime rate may not be precisely correct ... the advantages of the prime rate (it is quickly and easily ascertainable and it is a commercial—rather than government or retail—borrowing rate) outweigh the disadvantages of the imprecision.

*Hudock,* 124 B.R. at 534. Thus, the prime rate as of May 2, 1997 (the effective date of the plan) will be applied.

### CONCLUSION

For reasons set forth above and pursuant to order to be entered, the secured claim in the amount of $21,182.74 by the Money Store Auto Finance, Inc. will be disallowed. The Money Store will be allowed a secured claim in the amount of $13,675.00, discounted at the

prime rate as of May 2, 1996, to reflect present value and an unsecured claim in the amount of $7,507.74. Debtor's counsel will present an order to this effect.

The parties will endeavor to stipulate to the applicable prime rate; absent such stipulation, evidence thereon will be offered by the parties at the next hearing set.

The proposed Order will compute and specify the monthly payments to be made to the Money Store from the Chapter 13 Trustee under the Debtor's confirmed Plan. If it is necessary to amend that Plan, appropriate notice and motion for any proposed change will be sent to creditors for the date when the Order is presented.