**In re Bruce RUSSELL, Debtor.**

**Bankruptcy No. 97–00970–5–ATS.**

United States Bankruptcy Court,
E.D. North Carolina.

Aug. 20, 1997.

William E. Brewer, Raleigh, NC, for debtor.

Nelson G. Harris, Sandman & Strickland, P.A., Raleigh, NC, for Raleigh Post Office Employees' Credit Union.

Trawick H. Stubbs, Jr., New Bern, NC, Chapter 13 Trustee.

## ORDER REGARDING OBJECTION TO VALUATION

A. THOMAS SMALL, Chief Judge.

The matter before the court in this chapter 13 case is the secured creditor's objection to the debtor's valuation of collateral. A hearing was held in Raleigh, North Carolina on August 6, 1997.

The chapter 13 debtor, Bruce Russell, owns a 1993 Nissan Altima ("Nissan") that is subject to a lien held by the Raleigh Post Office Employees' Credit Union in the approximate amount of $10,000. Mr. Russell proposes to retain the Nissan, write down the amount of the secured claim pursuant to 11 U.S.C. § 506(a) and pay the present value of the reduced claim through the chapter 13 plan under 11 U.S.C. § 1325(a)(5)(B).

■ The issue before the court is the value of the automobile for purposes of the chapter 13 cram down provision, § 1325(a)(5)(B). Mr. Russell, relying on the asking price in a newspaper advertisement for the sale of a similar automobile, contends that the replacement value of the Nissan is $7,500. The credit union, relying on the National Automobile Dealers Association Guide ("NADA") retail value, maintains that the replacement value is $7,800.[1] The court believes that the NADA retail value most accurately reflects the replacement-value

---

1. The credit union's objection to the debtor's evaluation stated that the NADA retail value was $9,675, but at the hearing the credit union conceded that after making adjustments for high mileage, the NADA retail value was only $7,800. Typically, disputes over valuation involve more than the $300 presently at issue.

standard as set forth by the United States Supreme Court in *Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), and finds that the value of the Nissan is $7,800.

In *Rash,* the Court held that the bankruptcy court should use the replacement-value standard to determine the value of property that a chapter 13 debtor opts to retain and use pursuant to 11 U.S.C. § 1325(a)(5)(B). *Id.* at ——, 117 S.Ct. at 1883. The Court stated that

> under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) "cram down" option is the cost the debtor would incur to obtain a like asset for the same "proposed . . . use."

*Id.* at ——, 117 S.Ct. at 1886.

The Court explained that replacement value is "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition," *Id.* at ——, n. 2, 117 S.Ct. at 1883, n. 2, and specifically rejected the foreclosure-value standard as well as "a standard that picks the midpoint between foreclosure and replacement values." *Id.* at ——, 117 S.Ct. at 1886.

Mr. Russell argues that the court should not use NADA retail value to determine the value of the Nissan because the NADA retail value does not adequately reflect replacement value. According to Mr. Russell, a debtor would rarely purchase replacement property in the retail market because the debtor could obtain the property for less by going through newspaper advertisements or attending foreclosure sales. However, there is no credible evidence before the court that Mr. Russell could buy a similar automobile at less than retail through newspaper ads or that he has access to foreclosure sales.

The debtor introduced a single newspaper advertisement placed by a used car dealer for a similar automobile at an asking cash price of $7,500. The court does not find this evidence persuasive. Mr. Russell did not inspect the advertised automobile, and his knowledge of the automobile's condition came solely from the advertisement.

Mr. Russell also argues that if the NADA retail value is used as the replacement value, it should be reduced by warranty costs, reconditioning costs and other similar retail costs. A number of commentators have taken the position that if retail value is used, adjustments "must be made for items the debtor does not receive when he retains his vehicle, including any value added for the overhead assessed for retail-inventory storage, warranty, employee wages, and utilities." Laurie B. Williams, *The Rash Decision: Is "Replacement Value" A Terminal Case of Poison Ivy or a Mild Case of Eczema?*, NORTON BANKRUPTCY LAW ADVISOR, 9, 11 (June, 1997).

The notion that a retailer's overhead must be deducted from retail value comes from *Rash* footnote 6. The Supreme Court stated the following in footnote 6:

> We note, however, that replacement value, in this context, should not include certain items. For example, where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning. Cf. [*Matter of Rash,*] 90 F.3d, [1036] at 1051–1052 [(7th Cir. 1996)]. Nor should the creditor gain from modifications to the property—e.g., the addition of accessories to a vehicle—to which a creditor's lien would not extend under state law.

*Id.,* n. 6.

■ The court agrees with Mr. Russell that the creditor should not be benefited by extra value for things that the debtor does not have upon retaining and using the property. However, the NADA retail value does not appear to include any extra value for items not retained by Mr. Russell. For example, the NADA retail valuation takes into consideration the mileage on the automobile and does not include warranty costs. Neither does the NADA retail value include reconditioning costs. Consequently, there is no need to subtract these items from the NADA retail value.

To require a reduction of retail costs in determining value, as some have suggested is required by footnote 6, would be inconsistent with the specific holding in *Rash*, i.e.,

> the value of property retained because the debtor has exercised the § 1325(a)(5)(B) "cram down" option is the *cost the debtor would incur* to obtain a like asset for the same "proposed . . . use."

*Id.* at ——, 117 S.Ct. at 1886 (emphasis added), and

> we hold, the value of the property (and thus the amount of the secured claim under § 506(a)) is the *price a willing buyer* in the debtor's trade, business, or situation *would pay to obtain like property* from a willing seller.

*Id.* at ——, 117 S.Ct. at 1884 (emphasis added).[2] Furthermore, deducting retail costs is inconsistent with the Supreme Court's acknowledgment that a relatively simple method of computing value is necessary in chapter 13 cases.[3]

 Valuation for purposes of § 1325(a)(5)(B) is made on a case by case basis, but in this district, as a practical matter, the value is generally established at the meeting of creditors, and very few valuation hearings are held. The starting point for valuation of an automobile to be retained by a chapter 13 debtor has been the NADA retail value with adjustments agreed to by the debtor, the secured creditor and the chapter 13 trustee. If the parties do not agree, a hearing is held, and the court determines the value using a replacement standard, which in most cases is retail value. That practice has worked well and will be continued in this district.

To summarize, when valuing automobiles that debtors intend to retain and repay through plans pursuant to § 1325(a)(5)(B), the court will use a replacement value which in most cases will be a retail value without reduction for retail costs. Furthermore, the

starting point for that evaluation will be NADA retail value.

Accordingly, the value of Mr. Russell's 1993 Nissan is $7,800.

**SO ORDERED.**

---

2. Requiring the reduction of retail costs is also inconsistent with footnote 2.

3. In *Rash,* the Supreme Court agreed "with the Seventh Circuit that 'a simple rule of valuation is needed' to serve the interests of predictability and uniformity." —— U.S. at ——, 117 S.Ct. at

1886 (citing *In re Hoskins,* 102 F.3d 311, 314 (7th Cir.1996)). This court hears thousands of chapter 13 cases each year, most of which involve one or more automobiles, and an easily applicable standard is essential.