**In re Jerald A. KNIGHT and Michelle E. Knight, Debtors.**

**and**

**In re Earline Keyhea, Debtor.**

**Nos. 00–91033, 00–91455.**

United States Bankruptcy Court, C.D. Illinois, Danville Division.

Oct. 12, 2000.

David Ucherek, Urbana, IL, for debtors.

John E. Maloney, Urbana, IL, for creditor.

James R. Geekie, Paris, IL, trustee.

### OPINION

GERALD D. FINES, Bankruptcy Judge.

These matters having come before the Court for confirmation of Chapter 13 Plans; Objections to Confirmation of Chapter 13 Plans filed by Creditors, Marketview Motors, Inc. and Heights Finance Corporation; and motions to lift stay filed by both Creditors, Marketview Motors, Inc. and Heights Finance Corporation; the Court, having heard sworn testimony and arguments of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

These matters were consolidated for the purpose of trial on the objections to confirmation and motions to lift stay in that the issues involved in the subject objections and motions were the same in each case. Those issues are the valuations of vehicles pledged as collateral for loans to the Creditors and the appropriate interest rate to be paid to the Creditors through the Debtors' proposed Chapter 13 Plans.

The method for valuation of motor vehicles had been resolved by the Supreme Court in the case of *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). There is no question that valuation of motor vehicles for the purposes of 11 U.S.C. § 1325(a)(5)(B) is now governed by *Rash*. In *Rash*, the Supreme Court held that "replacement value" must be implied in order to give full meaning to 11 U.S.C. § 506(a). In ruling in *Rash*, the Supreme Court rejected the Seventh Circuit's approach to valuation at the midpoint between foreclosure value and replacement value as set forth in *The Matter of Hoskins*, 102 F.3d 311, at 316 (7th Cir.1996). Since *Rash* was rendered, it has been consistently held that replacement value is the price which a willing buyer agrees to pay a willing seller. Since the Opinion was rendered in the *Rash* case, most Courts have held that the starting point for valuation of automobiles would be the retail value as defined by the National Automobile Dealers' Association Guide (NADA). *See: In re Russell*, 211 B.R. 12 (Bankr.E.D.N.C. 1997); and *In re Roberts*, 210 B.R. 325 (Bankr.N.D.Iowa 1997). The Bankruptcy Courts in Illinois and in the Seventh Circuit have, in general, followed the "replacement value" standard as enunciated in *Rash*, and that will be the standard which this Court will also follow. *See: In re Jones*, 219 B.R. 506 (Bankr.N.D.Ill.1998).

In the *Keyhea* case, the vehicle involved is a 1987 Cadillac Brougham. In her

Chapter 13 Plan and in her Amended Chapter 13 Plan, filed October 5, 2000, the Debtor has valued the 1987 Cadillac Brougham at the sum of $4,000. In reviewing the credible evidence adduced at trial on September 18, 2000, the Court finds that the $4,000 value placed upon the vehicle by the Debtor is an appropriate value. The objecting Creditor suggested that the value should be the same as the purchase price; however, this testimony was not supported by any documentation as was the Debtor's estimate of value.

In the *Knight* case, there are two vehicles involved: a 1992 Chevrolet Lumina APV, pledged as collateral for a loan from Creditor, Heights Finance Corporation; and a 1989 Pontiac Grand Am, pledged as collateral to Marketview Motors, Inc. As for the value of the 1992 Chevrolet Lumina APV, the Court finds that the credible evidence adduced at trial shows that the subject vehicle has a value in excess of the current loan balance due to Heights Finance Corporation. As such, the amount of the secured claim of Heights Finance Corporation shall be in the amount of $2,503.93, as stated on the Proof of Claim filed by Heights Finance Corporation on June 20, 2000. As for the value of the 1989 Pontiac Grand Am, Creditor, Marketview Motors, Inc., seems to suggest in its Petition for Relief from Stay that this vehicle should have a value of no less than $6,000. The only testimony relevant to the value of the 1989 Pontiac Grand Am offered by Creditor, Marketview Motors, Inc., was that, if it was to have the vehicle returned to it, it could place it on the lot and sell it for a sum of no less than $6,000. The evidence as to the 1989 Pontiac Grand Am clearly suggests that the vehicle is not worth the sum of $6,000 as proposed by the Creditor given serious mechanical problems that developed with the vehicle within two months after it was purchased in the Fall of 1999. In reviewing the credible evidence presented at trial, the Court must conclude that the 1989 Pontiac Grand Am has a retail value of $2,950, based upon its age, mechanical condition, and mileage.

Having determined the valuation of the three vehicles involved in these proceedings, the Court now turns to the question of the appropriate interest rate to be paid on the secured claim of the Creditors. In their Plans, the Debtors propose to pay interest at the rate of 8% on each of the loans involved, both with Marketview Motors, Inc. and Heights Finance Corporation, while the Creditors claim that the appropriate rate of interest should be the market rate of interest, which Creditors argue, in these cases, should be the contract rate of interest.

In considering the appropriate rate of interest to be used, the Court finds that, pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), Debtors proposed payments to the Creditors must have a present value of that amount. Under this provision of the Bankruptcy Code, a creditor's interest in the property is what is to be protected and not the creditor's interest in the profit it had hoped to make on the loan. *See: In re Hudock*, 124 B.R. 532 (Bankr.N.D.Ill.1991), *citing In re Fisher*, 29 B.R. 542 (Bankr.D.Kan.1983). In deciding this question, the Court has reviewed numerous cases which discuss the appropriate interest rate to be applied in order that a secured creditor in a Chapter 13 case receives payments under the plan that total at least the value of its interest in the collateral as of the effective date of the plan, as provided by 11 U.S.C. §§ 506(a) and 1325(a)(5)(B)(ii). The cases which the Court has reviewed range all the way from contract rate of interest to market rate of interest to the prime rate of interest. This Court finds that the majority of Courts which have addressed this issue have found that the appropriate rate of interest to be applied is the prime rate at the time of the filing of the Chapter 13 plan, plus an additional amount added for a risk factor. *See: In re Hudock, supra,* at 534; *In re Carson*, 227 B.R. 719 (Bankr. S.D.Ind.1998); and *Koopmans v. Farm*

*Credit Services of Mid–America*, 102 F.3d 874 (7th Cir.1996).

■ As stated by the Court in *Carson*, in adopting a prime plus rule, the Court must determine the appropriate risk premium. The risk factor need not be large given the protections that creditors enjoy under Chapter 13 of the Bankruptcy Code. The Bankruptcy Court in the case of *In re Dingley*, 189 B.R. 264, at 272 (Bankr. N.D.N.Y.1995), pointed out that creditors enjoy numerous protections against risk in Chapter 13, among those are that Chapter 13 debtors must show that they are financially able to make all their payments under the proposed plan, creditors have an enhanced ability to assess the debtor's ability to service their debt, and wage orders can be used in Chapter 13s to eliminate the risk of a debtor defaulting on his or her monthly payments. This Court notes that the risk of default on a Chapter 13 secured debt is further reduced by the debtor's reduction and restructuring of his or her unsecured debt. Additionally, the Bankruptcy Court, in the case of *In re Fisher, supra*, at 544, noted that the cost of collection, such as garnishment and self-help repossession, are eliminated in Chapter 13, and costs of administration are largely borne by the Chapter 13 trustee.

■ In the instant cases, the Court finds that there are certain risks, and, in reviewing these matters on a case-by-case basis, the Court finds that the appropriate risk premium in the cases now before it is 2½% to be added to the prime rate. The appropriate prime rate at the time of these bankruptcy proceedings is found to be 9½%. As such, the Court finds that the total rate of interest to be applied on the three vehicle loans at issue here is the sum of 12%.

In the instant proceedings, the Debtors proposed to pay the Creditors interest at the rate of 8% over the life of their Plans. Given the standard adopted by this Court today of the prime rate of 9½% plus a risk factor of 2½%, the Court finds that the Plans proposed by the Debtors are not sufficient to pay the Creditors the present value of their claims, and, thus, not sufficient to meet the cram down requirements of 11 U.S.C. § 1325. As such, the Objections to Confirmation of Chapter 13 Plans filed by Creditors, Marketview Motors, Inc. and Heights Finance Corporation, must be sustained, and confirmation of the instant Chapter 13 Plans, as filed, must be denied. However, the Court finds it appropriate to allow the Debtors a period of 14 days in which to file amended Chapter 13 plans consistent with the findings in this Opinion.