**In re Dwight L. WILLIAMS, Debtor.**

**In re Christina R. Portilla, Debtor.**

**In re Christina Cummings, Debtor.**

**Nos. 01–09650–B13, 01–09889–B13, 01–10117–H13.**

United States Bankruptcy Court, S.D. California.

Feb. 20, 2002.

---

Brian M. Mahoney, American Debt Relief, San Diego, CA, for Debtors.

Martha E. Romero, Law Offices of Martha E. Romero & Associates, Whittier, CA, for County.

Thomas H. Billingslea, Chapter 13 Trustee, San Diego, CA, Chapter 13 Trustee for Cummings & Portilla.

David L. Skelton, Chapter 13 Trustee, San Diego, CA, Chapter 13 Trustee for Williams.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Chief Judge.

At issue is the rate of interest that will provide San Diego County ("County") with

payments having a present value equal to the allowed amount of its claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii).

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

## FACTS

The debtors in these consolidated cases [1] each filed a Chapter 13 petition under the Bankruptcy Code ("Code"). The County filed a proof of claim for unpaid taxes in each case. It is undisputed that the County's claims are secured.

Debtors submitted their respective plans of reorganization that proposed to defer payment of the tax claims under § 1325(a)(5)(B)(ii). Section 1325(a)(5)(B)(ii) permits a court to confirm a plan where the debtors provide deferred cash payments in satisfaction of the claim, if the sum of the payments equal the present dollar value of the claim as of the confirmation date. This requirement implies the payment of interest.

Debtors proposed the following in their plans:

| DEBTOR(S) NAME: | CLAIM AMOUNT | INSTALLMENT PAYMENT | INTEREST |
|---|---|---|---|
| Dwight L. Williams | $1,856.66 | $50.00 | 4.8% |
| Christina R. Portilla | $1,707.58 | $60.00 | 4.8% |
| Christina Cummins | $1,574.38 | $53.00 | 4.8% |

## DISCUSSION

### A. The Market Rate of Interest Applies.

■ County objects to debtors' proposed interest rate of 4.8% on the grounds that under California law, it would be entitled to receive statutory interest of 18% per annum on delinquent taxes. County contends that it is the statutory interest rate that controls and not the market rate as set forth in In re Camino Real Landscape Maint. Contractors, Inc., 818 F.2d 1503 (9th Cir.1987). The Court disagrees and finds Camino Real controlling in the Ninth Circuit.

Camino Real involved three consolidated cases involving Chapter 11 debtors who submitted plans of reorganization that proposed to defer the payment of Internal Revenue Service claims. The County argues that Camino Real is inapplicable be-cause it concerned unsecured tax claims and here the County is oversecured. The Ninth Circuit however specifically noted that its analysis regarding the appropriate rate of interest for an unsecured tax debt would "be useful to courts in considering secured . . . tax claims [as well]." Camino Real, 818 F.2d at 1504 n. 1. Therefore, it is irrelevant that the County's claim is oversecured for purposes of determining the proper rate of interest for delinquent taxes.

■ Similar to this case, the government in Camino Real argued that the interest rate on deferred taxes was fixed by statute—26 U.S.C. § 6621. The Ninth Circuit rejected the statutory rate of interest and instead found that the prevailing market rate of interest for a loan of a term

1. The parties stipulated at the February 6, 2002, hearing that the three cases would be consolidated.

equal to the payout period, considering both the quality of the security and subsequent default, was appropriate. Even though *Camino Real* dealt with Chapter 11 debtors, the requirements for confirming a Chapter 13 plan are similar given § 1325(a)(5)(B)(ii). Accordingly, "the fact that a particular debt arises from taxes due to the government does not affect the appropriate interest rate. It continues to be determined by the commercial loan market." *Camino Real*, 818 F.2d at 1506.

### B. *Determining the Appropriate Market Rate.*

Debtors timely submitted the declaration of their expert, George Dell ("Dell"). In determining the appropriate market rate, Dell relied on the analysis set forth in *Camino Real*, 818 F.2d at 1508 and *In re Fowler*, 903 F.2d 694 (9th Cir.1990). According to Dell, the market rate is determined by starting with a base rate, either the prime rate or the rate on treasury obligations, and then adding a factor based on the risk of default and the nature of the security (the "risk factor"). *Fowler*, 903 F.2d at 697.

As the base rate, Dell chose the prime interest rate which is currently 4.75%.[2] The value of the debtors' residences in all three cases ranged from a low of $180,000 (Portilla), $215,000 (Williams), to a high of $260,000 (Cummings). Dell testified that the taxes owed to the County are afforded first priority and are paid before every other creditor, including the mortgage lender. Dell then concluded that the risk of total loss to the County was .01% since the debtors' properties would need to become worthless for a loss to occur, and a total loss of value would be extremely rare in this situation. Dell then added the risk factor and the prime rate of 4.75% and concluded that the proper rate of interest was 4.76%. Debtors have agreed to pay 4.8%.[3]

The County argues that the 4.8% interest rate proposed by the debtors is far below the current rate for loans on real property. The County asserts those loans currently carry between 7% and 8% interest. The County lists a series of "risks" associated with the recovery of its tax lien, all of which are without merit and are without evidentiary support.[4]

---

2. The prime interest rate is higher than the rate on treasury obligations, which is the government's cost of borrowing. The court in *Camino Real* noted that "this rate is usually quite low because to the lender the government's obligation is a short-term, low risk investment. The obligation of a private borrower is quite different; its creditworthiness is not the same as the federal government's." The court further noted that the treasury rates may be relevant, but not the same as the § 1129(a)(9)(C) rate. *Camino Real*, 818 F.2d at 1506.

3. This was to accommodate the Chapter 13 trustee in his calculations.

4. On December 21, 2001, this Court issued its Order Regulating Evidentiary Proceedings and Fixing Date for Hearing which was served on the debtors and the County (the "Pre-Trial Order"). The Pre-Trial Order pro-

vided, *inter alia*, that January 18, 2002, was fixed as the last date by which all declarations in lieu of direct testimony shall be filed with the Court with a copy served on opposing counsel. Pre-trial orders requiring written declarations in lieu of direct oral evidence have long been considered valid orders in the Ninth Circuit. *In re Adair*, 965 F.2d 777, 779 (9th Cir.1992). The debtors obeyed the Court's order and timely filed the declaration of Mr. Dell; the County did not. On February 4, 2002, the day prior to the hearing on February 5, 2002, the County filed the declaration of Shell–Lee Davidson in support of its position. Also, on February 4, 2002, the County filed an ex parte application asking for a continuance to allow the Court time to read and consider the declaration submitted by its expert. At the February 5, 2002, hearing, the Court denied the County's continuance as being without merit and refused to

■ The risk factor in this situation is de minimis. Mr. Dell testified on cross-examination, there is even less risk in these cases because 1) the County enjoys a substantial equity cushion on its first priority lien on the debtors' residence, and 2) the debtors' income stream provides additional security by paying the claim through the Chapter 13 plan. County asserts that the debtors' pose a high risk factor because they have previously defaulted on paying their County taxes and have filed bankruptcy petitions. But, many courts point out that the risk factor is not large in a Chapter 13 case given the protections that creditors enjoy under Chapter 13 of the Code. *In re Knight*, 254 B.R. 227, 230 (Bankr.C.D.Ill.2000) (citations omitted). Specifically, Chapter 13 debtors must show that they are financially able to make all their payments under the proposed plan. Moreover, creditors have an enhanced ability to assess the debtors' ability to service their debt, and wage orders can be used in Chapter 13's to eliminate the risk of the debtors defaulting on their monthly payments. Finally, the cost of collection and garnishment and self-help repossession are eliminated in a Chapter 13 proceeding and the costs of administration are largely borne by the Chapter 13 trustee. *Id.*

■ Lastly, County contends that applying the statutory rate of interest to a Chapter 13 case promotes judicial economy. County argues that if the Court adopts a present value approach, there will always be litigation on the issue of the appropriate market rate because it is constantly changing. Yet, in reality, the present value approach promotes certainty with respect to the proper rate to be ap-

plied in these cases. In addition, parties are likely to be reasonable regarding the market rate of interest because of the guidance given in *Camino Real*, 818 F.2d 1503 and *Fowler*, 903 F.2d at 697–98 (i.e., starting with a base rate and adding a factor based on the risk of default and the nature of the security). Accordingly, the Court does not believe more litigation regarding the market rate will necessarily follow in these cases.

C. *Section 1322 Does Not Prevent The County's Claim From Being Altered.*

■ County argues that § 1322 prohibits the debtors from modifying its claim because it is secured by the debtors' residences. While it is true that a Chapter 13 plan may not modify the rights of holders of secured claims secured only by a security interest in the real property that is the debtors' principal residence, the County has neglected to note that 11 U.S.C. § 101(51) defines "security interest" as a lien created by an agreement. This type of security interest is most often seen in the form of a note secured by a deed of trust in California. A "security interest" does not include an involuntary tax lien affixed by the County.

CONCLUSION

The Court finds that the market rate of interest is the appropriate rate for delinquent taxes when considering plan confirmation and the provisions of § 1325(a)(5)(B)(ii).

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The attorney for the debtors is directed to file with this Court

---

consider the declaration of Ms. Davidson since it was untimely. Further, Ms. Davidson was not present in Court for cross-examination. The Court may exercise its discretion in

refusing to admit evidence where a party fails to comply with pre-trial order. *In re Gergely*, 110 F.3d 1448, 1452 (9th Cir.1997).

an order in conformance with this Memorandum Decision within ten (10) days from the date of entry thereof.